# Kittanning Coal Company *versus* Commonwealth.

1. The 7th sect. of the Act of April 24th 1874, taxing coal companies on their franchises according to the amount of coal mined, is constitutional.

2. Such taxation is not on the coal mined, but on the franchises, and is uniform.

3. The constitution, in declaring that all taxes should be uniform upon the same class, &c., did not mean that the property should be separated from the owners, or that property, not owners, should pay the tax.

May 24th 1875. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Dauphin county :* Of May Term 1875, No. 127.

This was an appeal of the Kittanning Coal Company to the Court of Common Pleas of Dauphin county, from the settlement of an account against them by the accounting officers of the Commonwealth; the appeal was filed September 17th 1874.

The appellant is a corporation created under the laws of Pennsylvania, with privilege to mine and sell coal. The company made a report to the auditor-general, July 16th 1874, of their business from April 24th to June 30th 1874, showing that they had during that time mined and purchased for the purposes of sale 19,585 tons of coal, besides that used in their business. The account was settled August 7th 1874, showing against the company a balance of $586.55 for taxes due the Commonwealth, under the 7th section of the Act of April 27th 1874, entitled "An Act for the taxation of corporations," Pamph. L. 68.

The section is as follows :—

"That every company incorporated or organized by or under any law of this Commonwealth, or incorporated or organized by or under any law of any other state, and doing business in this Commonwealth, which possesses the corporate right or privilege to mine, or to purchase or sell coal, shall semi-annually, upon the first days of July and January in each and every year, make report, under oath or affirmation, to the auditor-general, of the number of tons of coal mined during the six months preceding the said first days of July and January, by such company, and also of the number of tons of coal that shall be mined by any unincorporated association, partnership or individual, under any lease, contract, grant or mining privilege, upon the property of which

[Kittanning Coal Co. v. Commonwealth.]

the company making such report is the owner or lessee, or has any mining or coal privileges or interest therein, and also of the number of tons not mined as aforesaid, which shall have been purchased during the same period by the said company, and shall pay into the treasury of the Commonwealth an additional tax upon its corporate franchises, created by or used within this Commonwealth, at the rate of three cents upon each and every ton of two thousand two hundred and forty pounds of coal so mined or purchased as aforesaid: Provided, That the amount of coal consumed in the transaction of its business by any such company shall not be included in its return: And provided further, That said tax shall not be payable more than once in respect to the same ton of coal."

The appellants' specification of objections were:—

"1. The seventh section of the Act of Assembly, under which the taxes in suit purport to be imposed, is null and void, because in conflict with the first clause of the first section of the ninth article of the constitution.  Said taxes are not uniform, either as to the subject of the taxation or as to the persons taxed, nor as to the amount of the tax imposed.

"2. There is no Act of Assembly authorizing the imposition of the taxes claimed in this suit, or any part of them."

The first section of the ninth article of the constitution of 1873 is as follows:—

"Sect. 1. All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity."

The parties agreed that the trial by jury should be dispensed with, and that the decision should be submitted to the court, under the Act of April 22d 1874.

The case was heard in pursuance of the above agreement before Pearson, P. J.

After the evidence was taken, the defendants submitted the following points:—

1. The taxation imposed by the seventh section of the Act of 24th April 1874, being upon coal mined or purchased by the corporations therein enumerated, and not upon coal mined or purchased by individuals and partnerships, is not uniform within the first section of the ninth article of the constitution, and the plaintiff cannot recover.

2. Anthracite coal and bituminous coal are of different values, according to quality and location, and the statute in question, assuming to impose a specific tax of the same amount on all the

coal therein included, without any regard to values, is unconstitutional and void.

3. The imposition of the tax by the statute in question upon all coal mined or purchased by the enumerated corporations, except that used in their business, and the omission to impose the tax on the coal of individuals and partnerships, are in effect an exemption of the coal of the latter, as well as that so used, from taxation. Such exemptions are prohibited by the constitution, and the statute making them is unconstitutional and void.

4. A corporate franchise is not property subject to taxation under the state constitution.

The court, May 6th 1875, without specifically answering defendants' points, delivered an opinion holding that the tax was on the franchises, and not on the coal mined, &c., which was a mere measure of value; and the seventh section of the Act of April 24th 1874 was constitutional.

Judgment was therefore entered for the Commonwealth for $627.69.

The defendants took a writ of error; they assigned for error:—

1–4. Not affirming their points.

\*       \*       \*       \*       \*       \*       \*

6. Deciding the tax to be on the franchises of the corporations, and not upon the coal mined or purchased.

7. The seventh section of the Act of 24th April 1874, imposing the tax and prescribing exemptions, is not a "general law," as required by the first section of the ninth article of the constitution.

8. Not entering judgment for the defendants on the whole case as presented.

*L. W. Hall* and *F. Jordan,* for plaintiffs in error.—Uniform taxation means that all taxes must be so imposed that there may be equality of burden on the taxpayers in proportion to the value of the subject taxed. The word "uniform" is to be construed as equality, for words are to be construed literally or otherwise according to the instrument in which they are found: Bank *v.* Smith, 3 S. & R. 63. Instruments affecting multitudes are to be construed according to the spirit and intention: Monongahela Nav. Co. *v.* Coons, 6 W. & S. 114. A state constitution is to be so construed: Commonwealth *v.* Clark, 7 W. & S. 132; O'Mara *v.* Commonwealth, 25 P. F. Smith 433. Although the legislature may classify, it must not so do it as to defeat the end enjoined, viz.: uniformity: Bullard *v.* Bank, 18 Wallace 589; Exchange Bank *v.* Hines, 3 Ohio St. Rep. N. S. 1; Oliver *v.* Washington Mills, 11 Allen 268; Woodbridge *v.* Detroit, 8 Mich. R. 274; Knowlton *v.* Sup. of Rock Co., 9 Wis. 410; Attorney-General *v.* Plank Road Co., 11 Id. 35; City of Chicago *v.* Larned, 34 Ill. 203; Bureau County *v.* Railroad Company, 44 Id. 229; Chicago & N. W. Railroad Co. *v.*

[Kittanning Coal Co. v. Commonwealth.]

Sup. of Boone County, Id. 240; Prim v. City of Bellville, 59 Id. 142; State v. North & Scott, 24 Mo. 464; Cooley on Const. Lim. 502, 503, 514, 515; Sims v. The Parish of Jackson, 22 La. 440; City of New Orleans v. Home Mutual Ins. Co., 23 Id. 449; State v. Endorn, Id. 663; 2 Kent's Com. 332. Whatever be the basis of taxation, it must be uniform: Cooley on Const. Lim. 499; and must be spread over all the persons and objects determined by the legislature: Id. 515. No one class of individuals, and no one species of property should be unequally or unduly assessed: 2 Kent's Com. 332; People v. Eddy, 43 Cal. 331; Fletcher v. Oliver, 25 Ark. 289. Statutes exempting property from taxation in the face of constitutional prohibitions are null and void: Bank v. Hines, 3 Ohio (N. S.) 1, 15; Hunsaker v. Wright, 30 Ill. 146; People v. Eddy, 43 Cal. 331.

As to the constitutionality of the act, they cited: Wheeler v. Philadelphia, 27 P. F. Smith 338. The organic law and the statute law are in at least apparent conflict; and if the question be doubtful, the decision must be against the state; because in this country no tax can be lawfully imposed or collected without clear statutory authority: Cooley 517; Iron City Bank v. Pittsburg, 1 Wright 340; Dunne v. Deegan & Groves, 7 Id. 334; Commonwealth v. Railroad Co., 5 P. F. Smith 452; Hilbish v. Hower, 8 Id. 93.

*L. D. Gilbert*, Deputy Attorney-General, and *Dimmick*, Attorney-General, for Commonwealth, defendant in error.—In its most extensive sense "franchise" is expressive of great political rights, as the right of being tried by a jury, &c.: Angell & Ames on Corporations, sect. 4. "Franchise" as a right which a corporation obtains from the sovereign, means a particular privilege conferred by grant from government and vested in individuals: 3 Kent's Com. 458; 2 Sharswood Bl. Com. 37; Angell & Ames on Corps., sect. 4; 2 Redfield on Railways 452; Bank of Augusta v. Earle, 13 Pet. 519. A corporate franchise is property, and is subject to taxation: Gordon v. The Appeal Tax Court, 3 Howard 133; Bank v. City, 37 N. Y. 366; Society for Savings v. Coite, 6 Wallace 606; Prov. Inst. v. Mass., 6 Id. 611; Wilmington Railroad v. Reid, 13 Id. 268; Reading Railroad v. Pennsylvania, 15 Id. 277; Minot v. Railroad Co., 18 Id. 231. The interest, wisdom and justice of the representative body and its relations with its constituents furnish the only security against unjust and excessive taxation: Blackwell on Tax Titles 2; Bank v. Billings, 4 Pet. 514; Brewster v. Hough, 10 N. H. 138; Mack v. Jones, 1 Forster 393; McCulloch v. Maryland, 4 Wheaton 428. The power of taxation and of apportioning taxation, or of assigning to each individual his share of the burden, is vested exclusively in the legislature, unless this power is limited or restrained by some

[Kittanning Coal Co. *v.* Commonwealth.]

constitutional provision : People *v.* Mayor, 4 Comstock 419 ; Saw-
yer *v.* City of Alton, 3 Scammon 130 ; Dillon on Municipal Cor-
porations, sect. 588.   Nothing but a clear violation of the consti-
tution authorizes a court to declare a law unconstitutional: Braddee
*v.* Brownfield, 2 W. & S. 271 ; Erie & North East Railroad Co. *v.*
Casey, 2 Casey 301 ; Commonwealth *v.* Maxwell, 3 Id. 458.

Chief Justice AGNEW delivered the opinion of the court, May
31st 1875.

We are of opinion that the tax imposed by the 7th section of
the Act of April 24th 1874 is upon the corporate franchise of this
company measured by its business, to wit: by the number of tons
of coal mined or purchased and sold by it, and is not upon the
coal itself.   The tax thus imposed upon the franchise is uniform,
it being at the rate of three cents upon every gross ton. mined or
purchased and sold.   The argument against the tax must therefore
deny the right of classification.   The classification here is of in-
corporated coal mining, and purchasing and selling companies, and
the subject of taxation, their franchise or privilege of pursuing
this business.   Now, what is there to prevent the legislature from
making this class ?   It is not expressly forbidden in the first
section of the ninth article of the constitution.   It says: "All
taxes shall be uniform upon the same class of subjects within the
territorial limits of the authority levying the tax, and shall be
levied and collected under general laws."   Clearly there is nothing
in this prohibiting the power to classify.   Will it be argued that
persons, or the owners of property, cannot be classified?   For ex-
ample, can it be said that all single freemen cannot be required to
pay a uniform tax ?   Or that the owners of horses or mules, or of
cattle, cannot be taxed upon their horses, mules and cattle, at a
certain rate?   Or that the owner of unseated lands, or of farms, or
mills, or houses and lots cannot be taxed at a uniform rate?   What
difference is there between saying that all horses and mules shall
be taxed a certain rate, and saying that the owners of these horses
and mules shall be taxed at the same rate upon them?   The dis-
tinction is evidently unmeaning.   Persons pay taxes, not property.
This is so even when the remedy for the recovery of the tax is *in
rem*.   The law only takes hold of the property as a means of en-
forcing the duty of the person.   When the constitution enjoins
uniformity of taxation, it is because of the right of the citizen,
not of a right possessed by his property.   Property is known to
society and controlled only through its ownership, and even when
by death or other cause it becomes common, the law immediately
gives to it a new owner, and thereby prevents the strife which
would attend appropriation by seizure and occupancy.   Hence,
when the constitution said that all taxes shall be uniform upon the
same class of subjects within a given territory, it did not mean to

[Kittanning Coal Co. *v.* Commonwealth.]

separate the property from its owners, or that property and not persons should pay taxes. This would be simply absurd, for inanimate things cannot perform duties. Taxes shall be uniform because of the right of the citizens to bear no more than equal burthens. The whole argument on this question of uniformity rests on this right of the citizen to be exempt from unequal burthens in supporting government. That he who has more to be protected by government, should pay more for its support, is a plain rule. But without the power to classify men as well as things, this undesirable inequality cannot be avoided, for if visible or tangible things only can be classified for taxation, then those whose wealth consists in that which is not visible or tangible, though it be far beyond the few visible effects of the poorer citizen, will not bear their proper share of the public burden. And among corporations or artificial persons the same result will take place. For instance, the invested capital of a water company and a coal company may be equal, yet in a certain state of the market the coal may be without profit, while the water may bring in a large return. To tax one on the tons of coal sold and the other upon the quantity of water delivered would be grossly unequal. But by classification this inequality between persons, natural or artificial, can be avoided. It is clear, therefore, that the moment we concede the power to classify, we have disposed of the question of uniformity, for then all that is required by the constitution is uniformity of taxes among the members of the class. Now the power to classify is not only retained in clear language, but was held by the court to be continued in the case of Kitty Roup *v.* The City of Pittsburg. This power was possessed under the constitution of 1790, had been exercised in numerous laws, and existed when the new constitution was framed and adopted. Thus, real estate had been classified as seated and unseated, and by various kinds, as houses, lands, lots of ground, ground-rents, mills, manufactories, furnaces, ferries and others. The classification of personal property was equally various, to wit: slaves, horses, mules, cattle, carriages, watches, bonds, mortgages, stocks, moneys at interest, profits, &c. So trades, professions, callings, and even single men, were taxed by classification. Taxes were laid in various forms, as rates on values, rates on dividends, or profits, and by specific sums on specified articles. These things were well known to the convention of 1873, yet no change was made in the power to classify, but it was recognised by saying that all taxes shall be uniform on the *same class* of subjects within the territorial limits of the authority levying the tax, by the latter clause, even extending the power to classify by limiting the class to certain bounds. We must conclude, therefore, that a classification of coal-mining and purchasing and selling companies, is not beyond the legislative power, and the tax being clearly uniform upon their business, mea-

[Kittanning Coal Co. *v.* Commonwealth.]

sured by the extent of it, is not only within the meaning of the constitution, but is equal and just.

Judgment affirmed.