*L. A. Dickey,* for defendant.

---

JAMES CAMPBELL *v.* JONATHAN SHAW, Assessor First Taxation District.

HONOLULU IRON WORKS COMPANY *v.* JONATHAN SHAW, Assessor First Taxation District.

APPEALS FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED AUGUST 6, 1897.          DECIDED AUGUST 26, 1897.

JUDD, C.J., FREAR AND WHITING, JJ.

An Act entitled "An Act to provide revenue for the government by the assessment and collection of tax on income" held to be unconstitutional and void, on the ground that Section one of the Act imposes the tax in violation of Article eleven of the Constitution which requires that taxation must be proportional.

OPINION OF THE COURT, BY JUDD, C.J., (Frear, J., dissenting.)

These cases came before a Circuit Judge of the First Circuit Court and pro forma decrees were entered sustaining the demurrer interposed. By agreement the cases were heard by us in vacation, on the 5th and 6th instant.

The Legislature of 1896, passed on the 12th of June of that year Act 65 entitled "An Act to Provide Revenue for the Gov-

ernment by the Assessment and Collection of Tax on Income."
By the terms of the Act returns are to be made by the 31st of
August of this year.

The actions are bills in equity, claiming that the Act in ques-
tion is unconstitutional and void and pray that the Act may be
so declared and that the defendant as Tax Assessor for the First
Taxation District may be enjoined from assessing and collecting
the tax by the said Act imposed. The demurrers aver the con-
stitutionality of the Act.

In Campbell's case, the ten points made were that the Act is
unconstitutional and void because—

(a) The said income tax law requires the plaintiff to pay
taxes on income, either in the form of money or in investments
representing the same, upon which the plaintiff is taxed under
the provisions of Act 51.

(b) The said income tax law exempts from income tax all
persons having an income of less than $2,000 and also corpora-
tions, companies or associations organized and conducted solely
for charitable, religious, educational or scientific purposes, in-
cluding fraternal beneficiary societies, orders or associations
operating upon the lodge system and providing for the payment
of life, sick, accident or other benefits to the members of such
societies, orders or associations, and dependents of such mem-
bers: the stocks, shares, funds, real and personal property, or
securities held by any fiduciary or trustee for charitable, re-
ligious, educational or scientific purposes.

(c) The said income tax law allows an exemption of two
thousand dollars upon incomes under four thousand dollars,
whereas no such exemption is allowed upon incomes over four
thousand dollars.

(d) The said income tax law exempts from an income tax
all profits realized from sales of real estate purchased more than
two years previous to the close of the year for which income is
estimated.

(e) The said income tax law makes no deduction for any

amount paid out for new buildings, permanent improvements or betterments made to increase the value of any property or estate.

(f) The said income tax law taxes the salaries of the President and of the Justices of the Supreme Court as officers of the Republic.

(g) The said income tax law necessarily requires double and duplicate taxation of property.

(h) The said income tax law unreasonably and unlawfully exempts persons and property from taxation.

(i) The said income tax law does not require each member of society to contribute his proportion or share of taxes.

(j) The said income tax law requires no returns or taxes of mercantile firms and imposes no taxes on partnership property, income or gains other than by requiring returns from and taxing individual members of such firms in respect of their several interests in the firm property and income derived therefrom, whereby much partnership property and income are necessarily untaxed, resulting in an unlawful discrimination against the property and income of incorporated mercantile associations, as well as of other corporations and of individuals.

(k) The said income tax law is otherwise unconstitutional and void.

In the Honolulu Iron Works Company's case fourteen reasons that the Act is unconstitutional and void are alleged, as follows:

(1) That the exemption of incomes under two thousand dollars from taxation is unconstitutional, being in conflict with Article 11, Section 2, and (or) Article 12 of the Constitution of the Republic of Hawaii.

(2) The provision allowing an exemption of two thousand dollars upon incomes under four thousand dollars, whereas no such exemption is allowed to incomes over four thousand dollars is unconstitutional and void, being in conflict with Article 11, Section 2, and (or) Article 12 of the Constitution of the Republic of Hawaii.

(3) The provision allowing an exemption of two thousand

dollars upon all incomes of persons having an income under four thousand dollars whereas no such exemption whatever is allowed corporations having an income under four thousand dollars, is unconstitutional and void as being in conflict with Article 11, Section 2, and (or) Article 12 of the Constitution of the Republic of Hawaii.

(4) The provision making it lawful for any assessor who shall be of the opinion that a return is false or fraudulent or contains any under-statement to summon any person, vice-president, manager, resident manager or agent of, or any person having the possession, custody or care of books of account containing entries relating to the business of such person or corporation, wherever residing or found, to appear before him and produce such books at a time and place named in the summons, and to give testimony or answer interrogations under oath respecting any objects liable to tax or the returns thereof, and in case of any return of a false or fraudulent list, the imposition of two hundred per cent. penalty in addition to the tax imposed, is unconstitutional and void, being in conflict with Article 8 and (or) Article 6 of the Constitution of the Republic of Hawaii.

(5) The provision that when any person or corporation having a taxable income refuses or neglects to render any return or list of income required by law, or renders an understated, false or fraudulent return or list, that the assessor shall make according to the best information which he can obtain, and on his own view and information, such return according to the form prescribed of the income liable to tax possessed by such person or corporation, and that the said assessor shall assess the income; and in case of any return of a false or fraudulent list or valuation that he shall add 200 per cent. to such tax, and in case of a refusal or neglect to make a list or return, or to verify the same, he shall add 100 per cent. to such tax, is unconstitutional and void, being in conflict with Article 6 and (or) Article 8 of the Constitution of the Republic of Hawaii.

(6) The provision making it lawful for the assessor of the division in which any corporation is assessable, whenever he

shall believe that a true and correct return of the income of such corporation has not been made, to make an affidavit of such belief and of the grounds on which it is founded, and if the Minister of Finance shall on examination thereof conclude there are good grounds for such belief, then and thereupon making it lawful for him to issue a request in writing to such corporation to permit an inspection of the books of such corporation to be made, and if such corporation refuses to comply with such request, then making it lawful for the assessor of the division to make, from such information as he can obtain, an estimate of the amount of such income and then add one hundred per cent. thereto, which said assessment so made is made the lawful assessment of such income, and not subject to appeal, is unconstitutional and void, being in conflict with Article 10 and (or) Article 8 of the Constitution of the Republic of Hawaii.

(7)   The entire law imposing a tax on incomes is unconstitutional and void for the reason that in connection with Section 17 of Act 51 of the Session Laws of 1896, passed prior to the income tax law, which section provides that: "In estimating the aggregate value of each such enterprise for profits there shall be taken into consideration the net profits made by the same, and also the gross receipts and actual running expenses," etc., the said income tax law results in duplicate taxation, and is in conflict with Article 11, Section 2, and (or) Article 12 of the Constitution of the Republic of Hawaii.

(8)   The entire income tax law is unconstitutional and void for the reason that, taken in connection with Sections 14 and 16 of Act 51, Session Laws of 1896, passed prior to said income tax law, said income tax law results in duplicate taxation of all income received between the 1st day of July and the 1st day of January of each year, and remaining as money on hand on the 1st day of January, thus conflicting with Article 11, Section 2, and (or) Article 12 of the Constitution of the Republic of Hawaii.

(9)   The entire income tax law is unconstitutional and void for the reason that, taken in connection with Sections 14, 15

and 16 of Act 51, Session Laws of 1896, passed prior to said income tax law, it results in duplicate taxation of all income received between the 1st day of July and the 1st day of January of each year, and invested in real and (or) personal property within the jurisdiction of this Republic, thus conflicting with Article 11, Section 2, and (or) Article 12 of the Constitution of the Republic of Hawaii.

(10) The said income tax law is unconstitutional and void in that it exempts from its operation corporations, companies and associations organized and conducted solely for charitable, religious, educational and scientific purposes, including fraternal beneficiary societies, orders or associations operating upon the lodge system, and providing for the payment of life, sick, accident or other benefits to the members of such societies, orders and associations, and dependents of such members; and insurance companies taxed on a percentage of the premiums under the authority of any other act; and the stock, shares, funds, real and personal property or securities held by any fiduciary or trustee for charitable, religious, educational and scientific purposes, and is therefore in conflict with Article 11, Section 2, and (or) Article 1, Section 2, of the Constitution of the Republic of Hawaii.

(11) The said income tax law is unconstitutional and void in that it exempts from its operation all copartnerships consisting of two or more persons carrying on business together, and is therefore in conflict with Article 1, Section 2, and (or) Article 11, Section 2, of the Constitution of the Republic of Hawaii.

(12) The provisions of the income tax law imposing a tax of one per cent. on the incomes of every servant or officer of the Republic is unconstitutional and void so far as it relates to the salaries of the President and Justices of the Supreme Court, being in conflict with Article 25 of the Constitution of the Republic of Hawaii, and of Article 83 of the Constitution of the Republic of Hawaii.

(13) The entire income tax law is unconstitutional and void for the reason that such portions of it as are unconstitutional and void for any or all of the reasons above stated render

the conclusion inevitable that the Legislature would not have passed the remaining portions of the law.

(14)  The entire income tax law is unconstitutional and void for the reason that the exclusion and non-enforcement of such portions of it as are unconstitutional and void results in the entire tax being borne by only a portion of the community, and is therefore in conflict with Article 11, Section 2, and (or) Article 1, Section 2, of the Constitution of the Republic of Hawaii.

We will consider first the questions raised upon the first section of the Act.  The section reads as follows:

"From and after the first day of July, A. D. 1897, there shall be levied, assessed, collected and paid annually upon the gains, profits and income derived by every person residing in the Republic, and by every person residing without the Republic, from all property owned, and every business, trade, profession, employment or vocation carried on in the Republic, and by every servant or officer of the Republic, wherever residing, a tax of one per cent. on the amount so derived; provided, that where the gains, profits or income of any such person who resides within the Republic, or of any servant or officer of the Republic wherever residing, shall not have exceeded the sum of four thousand dollars for the preceding twelve months, only so much of such gains, profits or income as exceeds the sum of two thousand dollars, shall be liable to such tax, and the tax herein provided for shall be assessed by the assessors and collectors for the time being for the several tax divisions of the Republic, and collected and paid upon the gains, profits and income for the year ending the 30th day of June next preceding the time for levying, assessing, collecting and paying the said tax."

The plaintiffs claim that this section is violative of Article Eleven of the Constitution which reads:

Section 1.  No subsidy, duty or tax of any description shall be established or levied without the consent of the Legislature; nor shall any money be drawn from the Public Treasury with-

out such consent, except in the manner directed by this Constitution.

Section 2. Each member of society has the right to be protected in the enjoyment of his life, liberty and property, according to law; and therefore, he shall be obliged to contribute his proportion or share to the expense of this protection; and to give his personal services, or an equivalent when necessary, as may be provided by law.

The Act in question is claimed to be repugnant to other articles of the Constitution, especially Article 1, Section 2, which reads:

The Government is conducted for the common good, and not for the profit, honor or private interest of any one man, family or class of men.

Article 8. No person shall be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property, without due process of law.

Article 10. Every person has the right to be secure from all unreasonable searches and seizures of his person, his house, his papers and effects; and no warrant shall issue, except on probable cause, supported by oath or affirmation and describing the place to be searched and the persons or things to be seized.

It is urged by plaintiffs' counsel that Article 11 of the Constitution which declares that each member of society "shall be obliged to contribute his proportion or share to the expense of this protection," etc., means that each person may be obliged to pay only his proportion or share of such tax, that is, that the tax to be paid by each shall be in proportion to the income from property owned by him. To express it in another way, each person can only be taxed on his income rateably with the incomes of others. The tax of one must bear the same ratio to his income as the tax of others bears to their incomes.

The attorney for the defendant urges that there is no limitation to the power of taxation since we have no provision in the Constitution that taxes shall be "equal and uniform" as in

many other states, and that Article 11 of the Constitution is not a limitation of the taxing power and if it is, the legislature is the proper judge of what is the proportion or share that each member of society must contribute for the expenses of government. We do not agree with this contention. The power to tax for its support is inherent in every government, for it could not exist without such power, but this power is limited by Article 11, for by it taxes can only be imposed by the legislature and not by the executive, and the legislature can only exercise this power in the method pointed out, so that each person shall pay his "proportion or share." The inhibition to tax in any other way than that which accomplishes the result that each member of society bears only his proportion or share of the whole expense of government, does not differ essentially from a provision that taxation shall be equal and uniform. Certainly the taxing of A upon property of the same value as that of B more than the tax laid upon B would be compelling A to pay more than his "proportion or share" and the taxation would not be "equal and uniform."

In the light of this reasoning to tax A one per cent. of his entire annual income, if it exceeds the sum of four thousand dollars, and to tax B on only two thousand dollars of his income if the whole does not exceed four thousand dollars, and to impose no tax at all upon C if his income be less than two thousand dollars would be obliging A to pay more than his "proportion or share" of the tax, and such taxation would not be "equal and uniform." To this it is replied that the legislature has the power to exempt from taxation such subjects as it deems proper. But by all the authorities the exemptions must be supported by public considerations and tend to promote the general welfare. Of this character is the exemption from taxation long existing in this country to *every taxpayer* property to the value of three hundred dollars, the obvious purpose being not to tax at all those who are so poor as to possess property of only that value or less. But the statute in question does not exempt from taxation all incomes to the amount of two thousand dollars, but im-

poses upon him who receives over $4,000 a year a tax of one per cent. upon the whole amount, whereas the person whose income is less than four thousand dollars pays only on the excess of income over two thousand dollars. It is well settled that the legislature has the power to classify objects of taxation, but it is equally well settled that selections cannot be made out of a class for taxation and others of the same class be exempted. The effect of this section of the Act would be to place the burden of this tax upon those whose annual incomes are over four thousand dollars, and who constitute a minority of the community. It is argued that the exemption of incomes of two thousand dollars is reasonable and in furtherance of a public purpose, because the sum of two thousand dollars is the average annual cost of living of a family. This is a mere supposition and not to be taken for granted as true in our community. But if it be once conceded that exemptions so large as this can be made as a public benefit then exemptions of a much larger amount can be made which might place the whole burden upon the rich and if pushed to an extreme be a confiscation and not the proportional taxation authorized by the Constitution.

It may be argued that if that part of the statute which provides for these exemptions is inoperative and void because of its repugnancy to Article 11 of the Constitution, the rest of the section imposing the tax upon every one, might stand. But we do not know that the legislature would have passed that part of the section imposing the tax upon all persons were it not for the exemptions made. To mutilate the section by holding that the first part which imposes a tax upon *all* incomes of persons is constitutional, all exemptions being cut off, would be in effect the making of a new statute which we have no authority to do. The entire section expresses the intention of the legislature and its solidarity must either be preserved or the whole fails. The same reasoning will apply to Section 2 which imposes a tax of one per cent. upon the net income of corporations. It was the evident intention of the legislature to establish a general scheme of taxation and place a tax upon incomes of every description

whether derived by individuals or by corporations. It is not at all certain that the legislature would have passed the Act if it imposed the tax upon incomes of corporations alone and exempted incomes of individuals whether alone or in association as partners. The question before us is one of difficulty, upon which able minds differ and we have come to our opinion with caution. We have no disposition to interfere with the prerogatives of the legislature, but being convinced that the distinction made by the first section of the Act between the subjects of taxation of the same class violates the constitutional principle that taxation must be proportional, we declare the whole Act to be unconstitutional and void.

The demurrers are overruled.

*A. S. Hartwell, Kinney & Ballou,* for plaintiffs.

*A. G. M. Robertson,* for defendant.

### OPINION OF WHITING, J.

I agree with the opinion of the Chief Justice in so far as it declares the law unconstitutional as being in violation of Article 11 of the Constitution, for the reason that there is an unjust discrimination in the imposition of the tax on incomes over $4,000 without the allowance of the exemption given to those having a less income. The exemption of $2,000 of income from taxation ought to be allowed to all, in order that each member of society may bear his proportion or share of the burdens of taxation. The legislature may classify the objects of taxation, but when classified, there must be no discrimination. I am of opinion that the division of the income under Sec. 1 of the Income Tax Act of 1896 into $2,000, $2,000--$4,000, and $4,000 and over, is not classification of objects of taxation. I also agree that the whole Act falls, and the demurrer should be overruled.

### DISSENTING OPINION OF FREAR, J.

I respectfully dissent and in stating my reasons I shall refer only to the three main points involved in the case, all of which

are closely related, and upon one of which the other members of the Court base their decision and upon another of which they express different views. It will be unnecessary for me to express an opinion upon the other points raised by counsel. The three points referred to are (1) the $2,000 exemption or the discrimination between incomes over and under $2,000, (2) the partial exemption of incomes under $4,000, or the discrimination between incomes over and under $4,000, and (3) the non-exemption of corporate incomes or the discrimination between individual and corporate incomes. The question is, are these discriminations unconstitutional? Whether they are wise or founded on good policy is a matter solely for the legislature and if they are not wise or expedient the remedy lies with the constituents of succeeding legislatures. Unless they are clearly repugnant to some provision of the constitution, the court must hold them valid. It is contended that they are repugnant to Article 11, which provides, in Section 1, that "No Subsidy, Duty or Tax, of any description, shall be established or levied without the consent of the Legislature; * * * "; and, in Section 2, that "Each member of society has the right to be protected in the enjoyment of his life, liberty and property, according to law; and, therefore, he shall be obliged to contribute his proportion or share to the expense of this protection, * * * ." This article does not prescribe that income taxes or any other kind of taxes shall be levied in any particular manner. In the United States there are many special constitutional provisions as to the way in which particular taxes shall be laid. Under the Federal constitution, for instance, direct taxes must be laid by the rule of apportionment among the several States; and duties, imposts and excises must be laid by the rule of uniformity. In some of the States property taxes must be *ad valorem* and in proportion to value, while no rules are prescribed for other taxes, &c., &c. But by Article 11 of our constitution each person is merely obliged to contribute his share to the expense of government. He may do this through a great variety of taxes, and no rule is laid down to the effect that he

shall pay a part or proportional part of every particular tax
nor is there any rule prescribing how any particular tax shall be
laid. The attributes of equality and uniformity inhere, how-
ever, to some extent in the very idea of a tax and the tenor of
several provisions of our constitution is to the effect that no
unjust discrimination or so-called class legislation was intended
to be allowed in matters of taxation any more than in other mat-
ters. Besides Article 11, which provides that "Each person"
has the right to be protected in the enjoyment of his life, liberty
and property and shall contribute his "proportion or share,"
there are other provisions that show this intention, such as
Section 2 of Article 1, which sets forth that, "The Government
is conducted for the common good, and not for the profit, honor
or private interest of any one man, family or class of men."
Let us assume, therefore, that our constitution contains in sub-
stance the general provisions requiring equality and uniformity
of taxation found in the constitutions of some of the States and
the general provision of the 14th Amendment to the Federal
Constitution which provides that "No state shall deny to any
person within its jurisdiction the equal protection of the laws."
It is everywhere conceded that these provisions do not take from
the legislature the power to select or classify the subjects of
taxation, whether persons or things. The rule of uniformity
is complied with if all persons or things in the same class are
treated alike, and the rule of equality requires the existence of
the power of classification. For if but one kind of tax could be
laid and that by an iron rule of uniformity, taxation would fall
unequally on different persons. Where natural distinctions re-
quire discrimination, not to discriminate works injustice. Our
constitution requires approximate real equality of result in the
aggregate, not mere equality in form in the case of each particu-
lar tax. But when there is selection or classification it must be
real classification; it must be based on reasonable grounds; other-
wise it would not be classification; it would be arbitrary discrimi-
nation. To arbitrarily discriminate would be exaction, extortion,
confiscation; not taxation. And this is the distinction every-

where taken. If there is real classification, the court cannot interfere; if there is arbitrary, capricious or unreasonable discrimination the court may interfere. There is always, however, a very strong presumption not only that the legislature intended to act constitutionally, but that it succeeded in doing so, and the court should not declare an act of the legislature unconstitutional except in a very clear case. A few references will make clearer the foregoing propositions and at the same time illustrate their practical application.

In *Pacific Express Co. v. Seibert*, 142 U. S. 339, a special tax was laid upon express companies which did not own their own means of transportation and not upon other express companies, and the contention was that the rule of uniformity and equality was destroyed by arbitrary discrimination, but the court held that there was an essential difference between companies that owned their own means of transportation and those that did not, inasmuch as the former possessed property which was subject to other taxes and the latter would escape taxation unless taxed specially, and hence the classification was justified.

Referring to a State constitutional provision requiring uniformity and equality of taxation and the 14th Amendment to the Federal Constitution, the court said:

"This court has repeatedly laid down the doctrine that diversity of taxation, both with respect to the amount imposed and the various species of property selected either for bearing its burdens or for being exempt from them, is not inconsistent with a perfect uniformity and equality of taxation in the proper sense of those terms; and that a system which imposes the same tax upon every species of property, irrespective of its nature or condition or class, will be destructive of the principle of uniformity and equality in taxation and of a just adaptation of property to its burdens." See also *West. Un. Tel. Co. v. Indiana*, 165 U. S. 304, 309.

In *Com. v. Del. Div. Canal Co.*, 123 Pa. 594, corporate obligations were taken out of the general designation of sub-

jects and taxed upon a different standard of valuation and with a different method of collection. The court found several reasons why corporate and individual obligations might be distinguished in classification, among which were the fact that the former as a class were more capable of concealment and the fact that they had more of a commercial quality and were more subject to fluctuations in value, and in sustaining the constitutionality of the tax, said:

"Absolute equality is of course unattainable; a mere approximative equality is all that can reasonably be expected. A mere diversity in the methods of assessment and collection, however, if these methods are provided by general laws, violates no rule of right, if when these methods are applied the results are practically uniform. If there is a substantial uniformity, however different the procedure, there is a compliance with the constitutional provisions; even when there may be some disparity of results, if uniformity is the purpose of the legislature, there is a substantial compliance. Nor is classification necessarily based upon any essential differences in the nature or, indeed, the condition of the various subjects; it may be based as well upon the want of adaptability to the same methods of taxation, or upon the impracticability of applying to the various subjects the same methods, so as to produce just and reasonably uniform results, or it may be based upon well-grounded considerations of public policy.

"Hence it is that some classes of corporations are taxed upon net earnings, or income; others upon capital stock, the value thereof to be ascertained by their annual dividends, or in a certain event upon the actual value of the shares; others upon their gross receipts; insurance companies upon the gross amount of their premiums; coal and mining companies at a specific sum for every ton of coal mined, etc.

"Real estate, for taxation, has been classified as seated and unseated, and for municipal purposes may, perhaps, admit of further classification. Collateral inheritances are distinguished

from those that are direct, the former being subject to taxation, the latter not. Foreign insurance companies have been distinguished from domestic companies, and taxed independently and differently. So, trades, professions, callings, and even single men have been taxed by classification, and it has been said that professional men may be classified as physicians, lawyers, clergymen, etc.; tradesmen as merchants, mechanics, etc.; and other persons as bankers, manufacturers, etc., and a uniform tax assessed upon each class. Not only have taxes been laid in all these various forms, rated on values, on dividends or profits, on premiums, on net earnings, and on gross receipts, but also by specific sums on specific articles. The road bed, station houses, rolling stock and equipments of a railroad company; the canal bed, and berm banks, the locks, lock houses, etc., of a canal company; the banking house or place of business of a banking company, etc., are withdrawn from the ordinary processes of general taxation and are reached in a tax upon capital stock, which has always been regarded as a tax upon the property and assets. These several classifications and departures from uniformity in methods, were intended simply to bring about a just uniformity in results."

See also *Durach's Appeal*, 62 Pa. 491, 494, in which the court said: "In the legitimate exercise of the power of taxation, persons and things always have been and may constitutionally be classified. No one has ever denied this proposition. To hold otherwise, would logically require that all the subjects of taxation, as well persons as things, should be assessed, and an equal rate laid *ad valorem*. Practically no more unequal system could be contrived. * * * If the taxation is upon all of a class, either of persons or things, it matters not whether those included in it be one or many, or whether they reside in any particular locality or are scattered all over the state."

In *Kittaning Coal Co. v. Com.*, 79 Pa. 100, 105, the court said: "Without the power to classify men as well as things, this undesirable inequality cannot be avoided, for if visible or tangible things only can be classified for taxation, then those

whose wealth consists in that which is not visible or tangible, though it be far beyond the few visible effects of the poorer citizen, will not bear their proper share of the public burden. And among corporations or artificial persons the same result will take place." See also *North Pac. R. Co. v. Barnes*, 51 N. W. (N. D.) 386, 394.

In *Singer Mfg. Co. v. Wright*, 33 Fed. R. 121, 127, the court upheld a special tax on sewing machine companies, saying: "A mere arbitrary arrangement of the same business precisely into separate classes, and discriminating taxes as to the classes, might not be upheld. But where there is reasonable difference and distinction, the legislature is unrestricted in the matter of classification."

In *Leicht v. City of Burlington*, 73 Ia. 29, lots within the city limits containing more than 10 acres, and used for agricultural and horticultural purposes were exempted from municipal taxes. The court found a reasonable ground for the classification and said:

"This act was not made to apply to specific property, nor to specific persons. It was made to apply to a certain class of property, and to the owners of such property, whoever they might be. It is true that privileges and immunities cannot be granted to a class of citizens. But those who happen to be owners of a certain class of property do not themselves become a class in any proper sense. They do not sustain a relation to each other, but a mere property relation. They are affected by the statute in consequence merely of the circumstances in which they happen to be. *   *   * If the law operates upon every person within the relations and circumstances provided for, it is sufficient. *   *   *.

"It is urged by the plaintiffs, to be sure, that the distinction which the legislature has attempted to make between lots containing more than 10 acres or less, is purely arbitrary, and that for this reason the act cannot be said to have a uniform operation, as it might if the larger lots as provided could be said to constitute a class, as distinguished from the smaller lots. As to

this we think it may be said that the design of the legislature evidently was to exempt property which is used essentially for agricultural purposes. Where the limits of a city are extended so as to take in what is used essentially as a farm, there is much reason for exempting it from city taxes. But where the property is substantially residence property, as distinguished from agricultural, and valuable only as such whether improved or not, there is less reason, when it becomes city property, that it should be exempt from city taxes. The legislature seems to have thought that large lots brought within the city, and used for agricultural purposes do constitute a class, as distinguished from small lots, though agricultural products be grown upon them to some extent; and we think that it cannot be denied that the thought is correct. Proceeding manifestly upon this thought, it fixed the limit between what might be considered as belonging to one class and what to the other. This was necessary as a practical guide to the assessor."

These principles have been repeatedly applied under our various constitutions. To notice only some of our more general statutes,—one imposes different import duties upon different commodities, another different occupation or license taxes upon different businesses, another different stamp duties upon different documents, and even our general internal tax law is full of classifications. It imposes different specific taxes on dogs, drays and carriages, and not on most other kinds of personal property, and without regard to their different values, and although these classes of property are owned by some persons and not by others; it imposes poll, school and road taxes upon males between certain ages and not upon females or other males, or certain clergymen, firemen and soldiers; in its definition of personal property for purposes of taxation *ad valorem* it enumerates certain classes and omits other classes of personal property; it imposes a special income tax upon insurance companies; it wholly exempts certain classes of property devoted to educational, religious and charitable purposes, and property to the extent of $300 by whomsoever owned whether it be the whole or a part of the property of

the individual. No one has ever questioned, so far as I am aware, the constitutionality of these various discriminations. When an innovation is made it is apt to be looked upon with suspicion and there is a tendency to regard it as involving a new principle or no principle from the mere fact that we are not accustomed to it. The points now in question, it seems to me, involve merely new applications of old principles and may all be sustained by an application of those principles.

First, as to the exemption of $2,000. The objection to this is that it is too large. It is conceded that some exemption may be allowed on the same principle that exemptions of $300 are allowed under our general property tax act. Exemptions of incomes up to a certain amount have been allowed everywhere else so far as I know. The legislature alone can fix the amount. The court can interfere only when it is obvious that the amount is so large as to result in arbitrary discrimination. Certainly no one can say that the amount was fixed at $2,000 by the representatives of the many for the purpose of taking unfair advantage of the few. There is no indication of such an intention either on the face of the act or in extraneous facts. The presumption is that the legislature did its duty. There would naturally be a difference of opinion as to the proper amount. In cases of this kind where a limit must be placed somewhere great weight must be given to the opinion of the legislative body and the discretion of that body cannot be controlled by the courts except in a clear case of abuse. See *Leicht v. Burlington, supra,* and *The King v. Tong Lee,* 4 Haw. 335, 343. In Massachusetts the exemption of incomes is, or was recently, $2,000, the same as in our statute. *Pub. Sts.* p. 96. In the Federal statute recently before the United States Supreme Court, (*Pollock v. Farmer's Loan & Trust Co.,* 157 U. S. 429; 158 U. S. 601) and from which our statute was largely copied, the exemption was $4,000. It is noteworthy that though counsel in that case urged that the exemption was too large the court did not allude to the point. Several Justices referred to the point in individual opinions. Mr. Justice Field thought the exemption of $4,000 unconstitutional; 157 U. S. 596. Mr. Justice Harlan said (158 U. S. 675):

"In this connection, and as a ground for annulling the provisions taxing incomes, counsel for the appellant refers to the exemption of incomes that do not exceed $4,000. It is said that such an exemption is too large in amount. That may be conceded. But the court cannot for that reason alone declare the exemption to be invalid. Every one, I take it, will concede that Congress, in taxing incomes, may rightfully allow an exemption in some amount. That was done in the income tax laws of 1861 and in subsequent laws, and was never questioned. Such exemptions rest upon grounds of public policy, of which Congress must judge; and that determination cannot be interfered with by the judicial branch of the government, unless the exemption is of such a character and is so unreasonably large as to authorize the court to say that Congress, under the pretence merely of legislating for the general good, has put upon a few persons burdens that, by every principle of justice and under every sound view of *taxation*, ought to have been placed upon all or upon the great mass of the people. If the exemption had been placed at $1,500 or even $2,000, few, I think, would have contended that Congress, in so doing, had exceeded its powers. In view of the increased cost of living at this day, as compared with other times, the difference between either of those amounts and $4,000 is not so great as to justify the courts in striking down all of the income tax provisions. The basis upon which such exemptions rest is that the general welfare requires that in taxing incomes, such exemption should be made as will fairly cover the annual expenses of the average family, and thus prevent the members of such families becoming a charge upon the public. The statute allows corporations, when making returns of their net profits or income, to deduct actual operating and business expenses. Upon like grounds, as I suppose, Congress exempted incomes under $4,000."

Mr. Justice Brown said (*Ib.* 693):

"Irrespective, however, of the Constitution, a tax which is wanting in uniformity among members of the same class is, or may be, invalid. But this does not deprive the legislature of

the power to make exemptions, provided such exemptions rest upon some principle, and are not purely arbitrary, or created solely for the purpose of favoring some person or body of persons. Thus in every civilized country there is an exemption of small incomes, which it would be manifest cruelty to tax, and the power to make such exemptions once granted, the amount is within the discretion of the legislature, and so long as that power is not wantonly abused, the courts are bound to respect it. In this law there is an exemption of $4,000, which indicates a purpose on the part of Congress that the burden of this tax should fall on the wealthy, or at least upon the well-to-do. If men who have an income or property beyond their pressing needs are not the ones to pay taxes, it is difficult to say who are; in other words, enlightened taxation is imposed upon property and not upon persons. Poll taxes, formerly a considerable source of revenue, are now practically obsolete. The exemption of $4,000 is designed, undoubtedly, to cover the actual living expenses of the large majority of families, and the fact that it is not applied to corporations is explained by the fact that corporations have no corresponding expenses. The expenses of earning their profits are, of course, deducted in the same manner as the corresponding expenses of a private individual are deductible from the earnings of his business. The moment the profits of a corporation are paid over to the stockholders, the exemption of $4,000 attaches to them in the hands of each stockholder."

In *Minot v. Winthrop*, 162 Mass. 113, a question arose as to the constitutionality of an act imposing a tax on collateral legacies and successions, with an exemption of estates up to $10,000. The Constitution required the tax to be "reasonable." The court said: "The exemption in the statute under consideration is certainly large as an exemption of estates, but it is peculiarly within the discretion of the legislature to determine what exemptions should be made in apportioning the burdens of taxation among those who can best bear them, and we are not satisfied that this exemption is so clearly unreasonable as to require us to declare the statute void." No doubt exemptions of inheritances

might be much larger than exemptions of incomes, but the case cited illustrates the point that the amount of exemptions is peculiarly within the legislative discretion.

Secondly, the discrimination between personal incomes over $4,000 and those not exceeding $4,000. The argument against this assumes that the exemption up to $2,000 would be valid if it were applicable to all incomes. The effect of the provision imposing a tax upon all personal incomes with a proviso that those not exceeding $4,000 shall be exempt to the amount of $2,000, is to divide all personal incomes into three classes,—(1) incomes not exceeding $2,000, which are wholly exempt, (2) incomes from $2,000 to $4,000, which are partially exempt, namely, to the extent of $2,000, and (3) incomes over $4,000 which have no exemption at all. The question of the validity of these discriminations or classifications depends upon whether they are arbitrary or founded on real distinctions,—not indeed whether the limits are arbitrary but whether any classification at all of this nature may be justified on principle. For, if it may, it is obvious from the above reasoning upon the first point that the limits of these classes as fixed in this instance cannot be pronounced unreasonable by the court.

There can be little question, I think, that a graduated or progressive income tax in the usual form would be constitutional, as, for instance, if all incomes were exempt to the extent of $2,000, and all were taxed a certain rate upon their amount over $2,000 and up to $4,000, and all were taxed a higher rate upon their amount over $4,000. But what difference in principle is there between a progressive tax in the usual form and one in the form now under consideration? For this is merely one form of progressive tax. Both forms rest upon the power of classification, and if there is a basis for one method of classification there is a basis for the other. The argument made against a total or partial exemption of incomes up to a certain amount with no exemption at all for incomes above that amount is that it would enable the many in poor or moderate circumstances to cast all the burdens on the few wealthy. But this argument so far as it

has any weight at all would apply with greater force to a progressive tax in the usual form. For greater burdens could be thrown upon the wealthy by increasing the rate above a certain amount which of necessity would have to be reasonably small than by denying to them an exemption of that amount. As a matter of fact both these methods of a progressive income tax have been employed elsewhere. In England for many years the two systems appear to have been combined,—incomes to a certain amount being wholly exempt, incomes from that amount to a certain higher amount being taxed at various rates, and incomes over the latter amount being taxed at a uniform rate. 3 Dowell, Hist. of Taxation in Eng., 92 *et seq.* The more recent English income tax acts mentioned by Dowell appear to have been framed on the plan now in question. Incomes up to $750 were wholly exempt; those from $750 to $2,000 were exempt to the amount of $600; and those above $2,000 had no exemption. *Ib.* 111. Since then the upper limit of incomes partially exempt appears to have been raised to $2,500. Foster & Abbot, Income Tax Law of 1894, p. 4. We have had for some time upon our statute books examples of both these forms of progression. An example of one form is found in our stamp tax on mortgages. The rates are: $1 on mortgages up to $1,000, $2 for each $1,000 from $1,000 to $10,000, and $3 for each $1,000 over $10,000. An example of the other form is found in our stamp tax on deeds. The rates are: $1 on deeds up to $500, $2 on deeds from $500 to $1,000; from $1,000 to $10,000, $3 for each $1,000 on the whole amount; from $10,000 to $50,000, $4 for each $1,000 on the whole amount; over $50,000, $5 for each $1,000 on the whole amount. Another example of the latter form is found in our merchandise license tax. The tax is $50 if the gross annual sales are less than $20,000, and three-eighths of one per cent. of such sales if $20,000 or over.

Two reasons are sometimes given as grounds for a classification of incomes in this way. One is this: There should be equality in taxation, but by this is meant not equality in amount but equality of sacrifice. Now, one's income is spent for neces-

sities, conveniences and luxuries. If an income is sufficient only for necessaries, a tax upon it comes wholly out of necessaries; if the income is sufficient for both necessaries and conveniences, the tax comes wholly out of conveniences; if the income is sufficient for necessaries, conveniences and luxuries, the tax comes wholly out of luxuries. A tax of a given amount involves a greater or less sacrifice according as it curtails the amount of one or the other of these several forms of expenditure. Hence, as stated by Prof. Ely, Taxation in American States and Cities, 305, "It might seem just to have three rates of taxation: one for incomes, sufficient to furnish necessities; one for those sufficient to provide the useful; and one for those large enough to warrant luxuries." The other reason is this: "Taxation tends to diffuse itself, but on the line of least resistance. Now, the line of least resistance ·is found among the poor, the line of great resistance among the rich; whereas the line of moderate resistance will be found among people in moderate circumstances. Proportional taxation is always found to be regressive taxation; in other words the power of resistance on the part of wealth is so great that it never pays its fair share. *   *   * It may be urged that a nominally progressive tax would, after all, be no more than proportional in actual practice." *Ib.* 306. There is, indeed, no more reason why incomes may not be classified than there is why persons or things in general may not be classified. In *Glasgow v. Rowse*, 43 Mo. 479, a tax of three per cent. was laid on the salaries of all officers who were exempt from military duty in consequence of such offices, and a tax of two per cent. on the salaries and incomes of all other persons, over $600. The tax was sustained.

Thirdly, the discrimination between persons and corporations. Here also there are grounds upon which the discrimination can be justified so as to amount to real classification. Two grounds are referred to by counsel. One is that corporations, unlike individuals, have no personal or family expenses; the other is somewhat similar, namely, that in estimating their incomes for the purposes of the tax a corporation is allowed to deduct the cost of all labor employed in earning its income, while an individual

is allowed to deduct only the cost of hired labor without any allowance for his own time or labor. See the above quotations from the opinions of Justices Harlan and Brown upon this point. Also *Pacific Expr. Co. v. Seibert*; *Com. v. Del. Div. Canal Co.*, and other cases, *supra*.

So far as the three points discussed are concerned, I cannot find that the legislature has proceeded arbitrarily or without real grounds for classification or with any other purpose than to equalize the burdens of taxation. The tax is uniform upon all those within each class. With the various provisions of the statute so far as questions of policy are concerned, the court has nothing to do. The strong presumption is that the legislature acted within its constitutional power and that presumption has not been overcome. I have treated the subject at such length because of its importance.