GEORGE H. ROBERTSON *v.* J. W. PRATT, ASSESSOR
AND COLLECTOR OF TAXES FOR THE FIRST
TAXATION DIVISION.

WAIMEA SUGAR MILL COMPANY *v.* J. W. PRATT,.
ASSESSOR AND COLLECTOR OF TAXES FOR
THE FIRST TAXATION DIVISION.

ORIGINAL.

SUBMITTED AUGUST 13, 1901.        DECIDED AUGUST 26, 1901..

FREAR, C.J., GALBRAITH AND PERRY, JJ.

Parts of a statute may be invalid without rendering the statute invalid:
as a whole. No opinion is expressed as to the invalidity of certain
clauses of the income tax law which are claimed to violate the
constitutional guarantees against self-incrimination, unreasonable‹
searches and seizures, excessive fines and cruel and unusual pun-
ishments, inasmuch as no action has been taken under those
clauses, and they would not, if invalid, affect the remainder of the‹
statute.

If the Territorial legislature cannot tax the interest from United‹
States bonds and the salaries of the judges of the Supreme and·
Circuit Courts of the Territory, still the income tax law would not.
be invalid as a whole though general in terms and not expressly·
excepting such interest and salaries. A law may in cases be in-
valid or impliedly inapplicable to some of the objects within its.
letter without being void as a whole. The invalid part, to avoid‹
affecting the remainder of the law, need not be in a separate clause.

The legislature may classify the objects of taxation, provided the class-‹
ification is not merely arbitrary.

The legislature may place individuals in one class and corporations in‹
another class, exempting the incomes of the former up to one thou-
sand dollars in lieu of a deduction for personal and family ex–

penses, and not allowing a similar exemption to corporations, they having no such expenses, a deduction of other necessary expenses being allowed in both cases.

An exemption of incomes to the amount of one thousand dollars is not invalid on the ground that it is excessive.

Such exemption is valid though allowed only for the aggregate income of all members of a family composed of one or both parents and one or more minor children, or husband and wife; and for each ward except where two or more wards are comprised in one family, in which case the aggregate deduction shall not exceed one thousand dollars.

In estimating the income from sales of personal property, a taxpayer may lawfully be permitted to omit products produced and consumed by himself and not sold.

The legislature may lawfully put foreign insurance companies in a class by themselves, and tax them one per cent. on their gross income and other persons and corporations two per cent. on their net income and one per cent. on their property.

## OPINION OF THE COURT BY FREAR, C.J.

### (Galbraith, J., dissenting.)

The question involved in these cases is that of the validity or invalidity of the income tax law of the present year. The facts, most of the statute and the points raised are set forth in the dissenting opinion of Mr. Justice Galbraith.

The statute was taken largely from that of 1896, which was taken largely from that passed by Congress in 1894, which in turn was taken largely from those passed by Congress during the years 1861-1870.

The Federal income tax laws of 1861-1870, although some of them came before the courts on minor questions of construction or constitutionality, were never declared unconstitutional as a whole, although they undoubtedly were unconstitutional in view of the decisions about to be referred to in connection with the Federal income tax law of 1894.

The Federal income tax law of 1894 was held unconstitutional on the grounds that a tax on real or personal property was a direct tax, and that a tax upon the income derived from such

property was in reality a tax upon the property itself and therefore a direct tax,—from which it followed as a matter of course that the law was unconstitutional as to such taxes for the reason that they were not apportioned among the states according to their respective populations; and the tax upon income from real and personal property was so important a feature of the law that, the invalidity of that tax having been established, the remaining portions of the law also became invalid. *Pollock v. Farmer's Loan & Trust Co.*, 157 U. S. 429; 158 *Ib.* 601. As the constitutional provision which requires that direct taxes when laid by Congress shall be apportioned among the States according to their respective numbers has no application to a direct tax laid by a territorial legislature, the decision in the case just cited does not affect the present case.

The Hawaiian income tax law of 1896 was declared unconstitutional on the ground that there was an unjust discrimination between incomes over and incomes under $4000, inasmuch as the latter were exempt up to $2000, and the former not exempt as to any amount. *Campbell v. Shaw*, 11 Haw. 112. As the feature upon which that law was held unconstitutional in that case does not appear in the present law, that decision cannot affect the present case.

Let us then consider the present law on its own merits. The grounds upon which it is contended that the law is void are grouped by counsel as follows: (1) Discrimination between corporations and individuals; (2) Unwarranted exemptions; (3) Self-incrimination of the taxpayer; (4) Penalties unlawfully imposed; (5) Taxation of Salaries of Supreme and Circuit Court Justices and Judges; (6) Taxation of United States bonds; and (7) Invalidity of the Act as a whole because of invalidity of essential parts.

Points (3) and (4) will be disposed of first. Section 6 of the Act, after providing for lists or returns by taxpayers under oath, provides in substance that if a person or corporation refuses or neglects to render such return or renders a return which in the opinion of the assessor is false and fraudulent, or

contains any understatement, the assessor may summon such person or any of the officers of the corporation, &c., to appear before him and produce the books in relation to the business of such person or corporation and give testimony under oath respecting any income liable to tax or the returns thereof. Section 8, after providing that when a person or corporation having a taxable income refuses or neglects to render a return the assessor may make such assessments as he may consider just which shall not be subject to appeal, provides that in case of a false or fraudulent return or valuation by the taxpayer the assessor shall add 200 per cent. to a just valuation of the income of such taxpayers. It is contended that the last provisions in these two sections are in conflict with the provisions of the constitution which are designed to protect persons from unreasonabls searches and seizures, from giving testimony against themselves, from excessive fines and cruel and unusual punishments and from deprivation of property without due process of law. No action has been taken in these cases under these sections of the law and hence it is unnecessary for us to pass upon their validity or invalidity except in so far as the other portions of the Act which are now in question might be affected thereby. In our opinion if these provisions are void they do not affect the validity of the remainder of the Act, for they are separable. We cannot say that they are such essential parts of the Act that the legislature would not have passed the remainder if it had known that these could not stand.

Next, points (5) and (6). Section 1 of the Act provides for a tax of two per cent. upon incomes over and above one thousand dollars derived by persons residing in the Territory from property owned, and business, trade, &c., carried on in the Territory, and by persons residing without the Territory, from property owned, and business, trade, &c., carried on in the Territory, and by servants and officers of the Territory wherever residing. Section 3, prescribing how the income shall be estimated, provides that there shall be included among other things all income derived from interest upon notes, bonds, &c., except

such bonds of the Territory and its municipalities as shall by the law of their issuance be exempt from taxation. Section 4 prescribes what shall be deducted, but does not mention interest on United States bonds or the salaries of the Justices of the Supreme Court or Judges of the Circuit Courts.

It is apparent therefore that such interest and salaries are within the letter of the Act. We may assume also that the legislature was without power to tax such interest because that would be a tax on the borrowing power of the Federal government (see *Pollock v. Farmers' Loan & Trust Co., supra*), or such salaries because of the provision in Section 80 of the Organic Act that, "The salaries of   *   *   *   the chief justice and the justices of the supreme court and judges of the circuit courts shall not be diminished during their term of office." See opinion of Mr. Justice Field in the same case at page 604 of Vol. 157.

These are matters of comparatively little importance. The total tax on all such salaries would amount to only $670 a year, and it does not appear that any United States bonds are in this Territory or owned by residents of this Territory. Nor does it appear that the plaintiff in either of these cases has any interest in either of these questions except in so far as they affect the question of the validity of the Act as a whole. If the tax on such salaries and interest was provided for in a separate clause it is obvious that that clause would be separable and could be held invalid without affecting the remainder of the Act. But cannot one clause be held valid as to the bulk of the subjects to which it applies, and invalid or at least inoperative as to some subjects to which it would apply if taken literally? We think it can.

As the Supreme Court of the United States said in *Railroad Companies v. Schute*, 103 U. S. 118, 142, "The striking out is not necessarily by erasing words." The question is one of the intention of the legislature. If the statute, when held inapplicable to subjects which it is beyond the power of the legislature to tax, may still operate so as to give effect to the main purpose.

of the legislature, it may stand as to matters properly within its scope. No doubt a stricter rule applies to criminal statutes. But this is a civil statute. Nor is the striking out of a part of what is within the terms of a statute the same as striking out an invalid exemption or exception named in the statute, for in the former case the legislative will would merely be given effect, while in the latter case to strike out an exception would be to extend the operation of the statute to what the legislature had expressly excluded. The court cannot legislate.

In *Supervisors v. Stanley,* 105 U. S. 305, one tax act of the State of New York permitted debts to be deducted as to all personal property; another act provided for a tax upon the shares of banks, whether state or national, but contained no provision for similar deductions. The Supreme Court of the United States held that the latter was invalid as to holders of shares in national banks in cases where such deductions could be made, but that that did not render the statute invalid as to holders of shares in other banks at all or even as to holders of shares in national banks where such deductions could not be made. The court, per Mr. Justice Miller, said: "Is it (the statute) for that reason absolutely void? This cannot be true in its full sense, for there is no reason why it should not remain the law as to banks or banking associations organized under the laws of the State, or as to private bankers, of which there no doubt exists a large number of both classes.

"What is there to render it void as to a shareholder in a national bank, who owes no debts which he can deduct from the assessed value of his shares? The denial of this right does not affect him. He pays the same amount of tax that he would if the law gave him the right of deduction. He would be in no better condition if the law expressly authorized him to make the deduction. What legal interest has he in a question which only affects others? Why should he invoke the protection of the act of Congress in a case where he has no rights to protect? Is a court to sit and decide abstract questions of law in which the parties before it show no interest, and which, if decided either way, affect no right of theirs?

"It would seem that if the act remains a valid rule of assessment for shares of State banks, and for individual bankers, it should also remain the rule for shareholders of national banks who have no debts to deduct, and who could not, therefore, deduct anything if the statute conformed to the requirements of the act of Congress." See also *Packet Co. v. Keokuk*, 95 U. S. 80; *Austin v. The Aldermen*, 7 Wall. 694; *McCready v. Sexton*, 29 Ia. 356.

In *The Collector v. Day*, 11 Wall. 113, the Supreme Court of the United States, in construing the income tax acts of 1864, '5, '6 and '7, which were in substantially the same language as ours, held that Congress could not constitutionally impose a tax upon the salary of a judicial officer of a State, and, although the statute was, like ours, general in its terms and contained no exception as to such salaries, yet no one seems to have thought that the statute would be affected as to other incomes. See also Cooley, Taxation, 130.

In *Pollock v. Farmers' Loan & Trust Co.*, *supra*, the court was at the first hearing (one member being absent) evenly divided upon the question whether the invalidity of the law so far as it affected income from real property, even though the tax on such income was a very large proportion of the whole tax, would render those sections of the law invalid altogether; but on the second hearing, all the members being present, the court decided that the law was invalid as to incomes from personal property also and then a majority held that the invalidity as to incomes from both real and personal property was sufficient to render those sections invalid altogether.

Point (1), discrimination between corporations and individuals. Section 1 of the Act provides for a tax on the income of individuals over and above one thousand dollars. Section 2 provides for a tax upon the net income of corporations without authorizing a deduction of one thousand dollars. This raises the question whether our legislature may classify objects for the purposes of taxation, and, if so, whether it has done so properly in this instance.

The Constitution of the United States contains no provision that in terms limits the power of Territorial legislatures in matters of taxation. Hence it is contended that the limitations or some of them placed by that instrument upon the Federal or State governments apply to the Territories.

As to the limitations upon the Federal government, the argument is that the creature, the Territory, cannot do what the creator, Congress, cannot do. The power of Congress to tax is given in the Constitution with only one exception and only two qualifications. *Fairbank v. United States*, 21 Sup. Ct. Rep. 648, 653. The exception is that it cannot tax exports. This of course has no application to the present case. One qualification is that it cannot lay direct taxes except by the rule of apportionment. This, also, as we have seen, has no application to this case. The other qualification is that it cannot lay indirect taxes except by the rule of uniformity. Such taxes must be "uniform throughout the United States." It is equally clear that this clause also has no application to taxes imposed by Territorial legislatures. If a Territorial legislature could not impose any direct tax unless it apportioned it among the States and could not impose any indirect tax unless it made it uniform throughout the United States, it could not impose any tax at all. We may add that the uniformity required by this clause of the Constitution is only a geographical uniformity and that it does not prohibit classification for purposes of taxation. *Knowlton* v. *Moore*, 178 U. S. 41, in which an Act of Congress which provided for inheritance taxes was held constitutional, though all amounts under $10,000 were exempt and amounts above that were divided into five classes according to the nearness or remoteness of relationship of the taker to the decedent and each of these five classes were subdivided into five other classes according to the amount received, the tax being graduated, increasing with the remoteness of the relationship and the amount received.

The constitutional prohibitions against the laying of duties on imports and exports and duties of tonnage by the States of course do not apply to this case. But it is contended that the provision of the 14th Amendment that, "No State shall * * * deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws," is applicable. This provision applies to corporations as well as to natural persons. *Covington, &c., Turnpike Co. v. Sanford*, 164 U. S. 578, 592. Whether it applies to Territories as well as to States proper we need not say. It would seem to apply to the States only. If it applies to the Territories, still it does not prevent classification for the purpose of taxation. *Cargill Co. v. Minnesota*, 180 U. S. 452. In that case, the State of Minnesota imposed a license fee upon receiving, shipping, storing or handling grain at elevators along railways, except at terminal points. It did not cover elevators at terminal points on railways or elevators not along railways and made no distinction between those in which the grain of the owner only was handled and those in which the grain of others was handled. The court held under the circumstances not only that there might be classification notwithstanding the 14th Amendment, but that the classification in that instance should be sustained. It said, per Mr. Justice Harlan (at page 469) :

"Assuming that the defendant is entitled, upon this record, to invoke the benefit of the clause of the Fourteenth Amendment forbidding a State from denying to any person within its jurisdiction the equal protection of the laws, we adjudge that as the statute applies to all of the class defined in its first section, it is not invalid by reason of its non-application to those who own or operate elevators *not* situate on the right of way of a railroad. The railroad, as this court has often said, is a public highway established primarily for the convenience of the public, and—subject always to any right acquired by the railroad company under an inviolable contract with the State—the use of such a highway may be so regulated as to promote the public convenience, provided such a regulation be not arbitrary in its character and does not materially interfere with the enjoyment

by the railroad company of its property. The right of way is so
closely connected with the operations of the railroad company
that its use may be so regulated by the State as to promote the
ends for which the corporation was created, and thus subserve
the interests of the general public without interfering unrea-
sonably with the company's management of its property. If in
the judgment of the State it was necessary for the public inter-
ests, or beneficial to the public, that elevators and warehouses
of the kinds described should be operated only under a license
and under such regulations as may be rightfully prescribed, it
would be going very far to hold that such a classification was
so unreasonable as to justify us in adjudging that the require-
ment of a license was void as denying the equal protection of
the laws. No such judgment could be properly rendered unless
the classification was merely arbitrary or was devoid of those
elements that are inherent in the distinction implied in classi-
fication. We cannot perceive that the requirement of a license
is not based upon some reasonable ground—some difference that
bears a proper relation to the classification made by the statute.
*Gulf, Col. & Santa Fe Ry. v. Ellis*, 165 U. S. 150, 165. It is
worthy of observation in this connection that it was neither
alleged nor proved that there were in the State any elevators
or warehouses that were not situated on the right of way of a
railroad company."

In *Giozza* v. *Tiernan*, 148 U. S. 657, the court, per Chief
Justice Fuller, said:

"Nor, in respect of taxation was the amendment intended to
compel the State to adopt an iron rule of equality; to prevent the
classification of property for taxation at different rates; or to
prohibit legislation in that regard, special either in the extent
to which it operates or the objects sought to be obtained by it.
It is enough that there is no discrimination in favor of one as
against another of the same class. *Bell's Gap Railroad* v.
*Pennsylvania*, 134 U. S. 594; *Pacific Express Co. v. Seibert*,
142 U. S. 339. And due process of law within the meaning of
the amendment is secured if the laws operate on all alike, and
do not subject the individual to an arbitrary exercise of the
powers of government. *Leeper* v. *Texas*, 139 U. S. 462."

The 5th Amendment, however, which provides that, "No
person shall be   *   *   *   deprived of life, liberty or property
without due process of law," undoubtedly applies to the Terri-

tories, and while this might prevent arbitrary discriminations, it would not prevent classifications for the purpose of taxation. See *Giozza* v. *Tiernan, supra.*

The Organic Act provides in Section 55 that, "The legislature shall not grant to any corporation, association, or individual any special or exclusive privilege, immunity, or franchise without the approval of Congress." This also would not exclude selections or classifications for the purposes of taxation, though it might require all within the same class to be treated alike. Even the provision found in many of the State Constitutions, that taxes "shall be equal and uniform," does not prevent classification of the objects of taxation.

There is perhaps no necessity of relying on either the 5th Amendment or Section 55 of the Organic Act to show that, while the legislature may classify, it cannot arbitrarily discriminate in matters of taxation. The restrictions inherent in the nature of free government and American institutions as well as in the very definition of a tax may be sufficient to prevent unjust discrimination. As was said in the dissenting opinion of *Campbell* v. *Shaw, supra,* that opinion in this respect arriving on general principles at the conclusion that the majority of the court drew from certain provisions in the constitution of the Republic of Hawaii, since abrogated: "The attributes of equality and uniformity inhere, however, to some extent in the very idea of a tax," and, referring to the 14th Amendment and to' State constitutional provisions requiring equality and uniformity, "It is everywhere conceded that these provisions do not take from the legislature the power to select or classify the subjects of taxation, whether persons or things. The rule of uniformity is complied with if all persons or things in the same class are treated alike, and the rule of equality requires the existence of the power of classification. For if but one kind of tax could be laid and that by an iron rule of uniformity, taxation would fall unequally on different persons. Where natural distinctions require discrimination, not to discriminate works injustice. Our constitution requires approximate real

equality of result in the aggregate, not mere equality in form in the case of each particular tax. But when there is selection or classification it must be real classification; it must be based on reasonable grounds; otherwise it would not be classification. To arbitrarily discriminate would be exaction, extortion, confiscation; not taxation. And this is the distinction everywhere taken. If there is real classification, the court cannot interfere; if there is arbitrary, capricious or unreasonable discrimination, the court may interfere. There is always, however, a very strong presumption not only that the legislature intended to act constitutionally, but that it succeeded in doing so, and that the court should not declare an act of the legislature unconstitutional except in a very clear case. A few references will make clearer the foregoing propositions and at the same time illustrate their practical application.

"In *Pacific Express Co.* v. *Seibert*, 142 U. S. 339, a special tax was laid upon express companies which did not own their own means of transportation and not upon other express companies, and the contention was that the rule of uniformity and equality was destroyed by arbitrary discrimination, but the court held that there was an essential difference between companies that owned their own means of transportation and those that did not, inasmuch as the former possessed property which was subject to other taxes and the latter would escape taxation unless taxed specially, and hence the classification was justified.

"Referring to a State constitutional provision requiring uniformity and equality of taxation and the 14th Amendment to the Federal Constitution, the court said:

" 'This court has repeatedly laid down the doctrine that diversity of taxation, both with respect to the amount imposed and the various species of property selected either for bearing its burdens or for being exempt from them, is not inconsistent with a perfect uniformity and equality of taxation in the proper sense of those terms; and that a system which imposes the same tax upon every species of property, irrespective of its nature or condition of class, will be destructive of the principle of uniformity and equality in taxation and of a just adaptation of property to its burdens.' See also *West. Un. Tel. Co. v. Indiana*, 165 U. S. 304, 309.

"In *Com. v. Div. Canal Co.*, 123 Pa. 594, corporate obligations were taken out of the general designation of subjects and taxed upon a different standard of valuation and with a different method of collection. The court found several reasons why corporate and individual obligations might be distinguished in classification, among which were the fact that the former as a class were more capable of concealment and the fact that they had more of a commercial quality and were more subject to fluctuations in value, and in sustaining the constitutionality of the tax, said:

" 'Absolute equality is of course unattainable; a mere approximate equality is all that can reasonably be expected. A mere diversity in the methods of assessment and collection, however, if these methods are provided by general laws, violates no rule of right, if when these methods are applied the results are practically uniform. If there is a substantial uniformity, however different the procedure, there is a compliance with the constitutional provisions; even when there may be some disparity of results, if uniformity is the purpose of the legislature, there is a substantial compliance. Nor is classification necessarily based upon any essential differences in the nature or, indeed, the condition of the various subjects; it may be based as well upon the want of adaptability to the same methods of taxation, or upon the impracticability of applying to the various subjects the same methods, so as to produce just and reasonably uniform results, or it may be based upon well-grounded considerations of public policy.

" 'Hence it is that some classes of corporations are taxed upon net earnings, or income; others upon capital stock, the value thereof to be ascertained by their annual dividends, or in a certain event upon the actual value of the shares; others upon their gross receipts; insurance companies upon the gross amount of their premiums; coal and mining companies at a specific sum for every ton of coal mined, etc.

" 'Real estate, for taxation, has been classified as seated and unseated, and for municipal purposes may, perhaps, admit of further classification. Collateral inheritances are distinguished from those that are direct, the former being subject to taxation, the latter not. Foreign insurance companies have been distinguished from domestic companies, and taxed independently and differently. So, trades, professions, callings, and even single men have been taxed by classification, and it has been said that

professional men may be classified as physicians, lawyers, clergy-
men, etc.; tradesmen as merchants, mechanics, etc.; and other
persons as bankers, manufacturers, etc., and a uniform tax as-
sessed upon each class. Not only have taxes been laid in all
these various forms, rated on values, on dividends or profits,
on premiums, on net earnings, and on gross receipts, but also
by specific sums on specific articles. The road bed, station
houses, rolling stock and equipments of a railroad company;
the canal bed, and berm banks, the locks, lock houses, etc., of
a canal company; the banking house or place of business of a
banking company, etc., are withdrawn from the ordinary
processes of general taxation and are reached in a tax upon cap-
ital stock, which has always been regarded as a tax upon the
property and assets. These several classifications and departures
from uniformity in methods were intended simply to bring
about a just uniformity in results.' *   *   *   *   *   *

"These principles have been repeatedly applied under our
various (Hawaiian) constitutions. To notice only some of our
more general statutes—one imposes different import duties upon
different commodities, another different occupation or license
taxes upon different businesses, another different stamp duties
upon different documents, and even our general internal tax
law is full of classifications. It imposes different specific taxes
on dogs, drays and carriages, and not on most other kinds of
personal property, and without regard to their different values,
and although these classes of property are owned by some per-
sons and not by others; it imposes poll, school and road taxes
upon males between certain ages and not upon females or other
males, or certain clergymen, firemen and soldiers; in its defini-
tion of personal property for purposes of taxation *ad valorem* it
enumerates certain classes and omits other classes of personal
property; it imposes a special income tax upon insurance com-
panies; it wholly exempts certain classes of property devoted to
educational, religious and charitable purposes, and property to
the extent of $300 by whomsoever owned whether it be the
whole or a part of the property of the individual. No one has
ever questioned   *   *   *   the constitutionality of these vari-
ous discriminations. When an innovation is made it is apt to
be looked upon with suspicion and there is a tendency to regard
it as involving a new principle or no principle from the mere
fact that we are not accustomed to it. The points now in ques-
tion   *   *   *   involve merely new applications of old princi-

ples and may all be sustained by an application of those principles."

In the light of the principles above set forth and the cases referred to, it would seem hardly necessary to say more to show, not only that the legislature might classify but that it did properly classify as between individuals and corporations in this instance. Reference may, however, be made to passages found in regard to a similar provision in the Federal law of 1894, in *Pollock v. Farmers' Loan & Trust Co., supra.* Mr. Assistant Attorney General Whitney said in his argument (157 U. S. 477):

"It is further said that a corporation is not allowed to deduct $4000 from its income before paying the tax, as is the case with an individual. The reason is plain. This is not a tax upon gross income, but a tax upon net income. The net income of a corporation is radically different in character from that of an individual. Among the elements which go to make up the so-called net profits or income of an individual is that known to economists as 'wages of superintendence' or the value of the labor of the individual himself. See *Muser v. Magone,* 155 U. S. 240. The individual business man does not pay himself wages or keep any account representing his estimate of the value of his own services. Everything that he makes over and above what he pays out to somebody else must be returned as net income. The net income of a corporation, on the other hand, contains no such element. The 'wages of superintendence' consist of the salaries of its managers and is counted as an expense. When the individual owner of the business incorporates it, he at once begins to pay himself a salary from the funds of the corporation. If, therefore, the corporation were allowed the same *minimum* as an individual, there would be a lack of uniformity prejudicial to the individual."

We believe only two of the Justices referred to this provision in their opinions, both justifying it. Mr. Justice Harlan, after speaking of the exemption of incomes of individuals up to $4000, said (158 U. S. 676): "The statute allows corporations, when making returns of their net profits or income, to deduct actual operating and business expenses. Upon like grounds, as I suppose, Congress exempted incomes under $4000." Mr.

Justice Brown said (Ib. 694): "The exemption of $4000 is designed, undoubtedly, to cover the actual living expenses of the large majority of families, and the fact that it is not applied to corporations is explained by the fact that corporations have no corresponding expenses. The expenses of earning their profits are, of course, deducted in the same manner as the corresponding expenses of a private individual are deductible from the earnings of his business. The moment the profits of a corporation are paid over to the stockholders, the exemption of $4000 attaches to them in the hands of each stockholder."

That the reason assigned for this distinction by Mr. Justice Brown, namely, that the exemption of $4000 was for personal and family expenses and "that corporations have no corresponding expenses," was one that the legislature had in mind, is shown by the proviso contained in Section 4 of the Act (which provides for deductions of necessary expenses) "that no deduction shall be made for personal or family expenses, the exemption of one thousand dollars mentioned in Section 1 being in lieu of same."

Not only have corporations no personal or family expenses, but in estimating their incomes for the purposes of the tax they are allowed to deduct the cost of all labor employed in earning the income, while individuals are allowed to deduct only the cost of hired labor without any allowance for their own time or labor.

Point (2), unwarranted exemptions.

(a) The Act, as we have seen, exempts incomes of individuals up to one thousand dollars, and, as we have also seen, this is intended to be in lieu of personal and family expenses. It is contended that this is an unreasonable and arbitrary exemption.

It seems to be conceded that an exemption of some amount could properly be made just as an exemption of $300 is allowed under our general property tax law. The question is whether the amount of one thousand dollars is excessive. It can hardly be contended that it is so large as to manifest a purpose on the part of the legislature to step from its proper sphere of action

in providing for a tax and to use the form of a tax law merely
for the purpose of arbitrary exaction or confiscation from the
few wealthy members of the community.

In England exemptions of $750 have been allowed. In the
Federal income tax laws of 1861-70, the exemptions were at
different times, $600, $800, $1000 and $2000. In Massachu-
setts an exemption of $2000 has been allowed under an income
tax law. In the Federal law of 1894 the exemption amounted
to $4000. Three members of the court referred to this in their
opinions referred to. Mr. Justice Field thought the exemption.
too large (157 U. S. 596). Mr. Justice Harlan said (158 U. S.
675):

"In this connection, and as a ground for annulling the pro-
visions taxing incomes, counsel for the appellant refers to the
exemption of incomes that do not exceed $4000. It is said that
such an exemption is too large in amount. That may be con-
ceded. But the court cannot for that reason alone declare the
exemption to be invalid. Every one, I take it, will concede that
Congress, in taxing incomes, may rightfully allow an exemption
in some amount. That was done in the income tax laws of 1861
and in subsequent laws, and was never questioned. Such ex-
emptions rest upon grounds of public policy, of which Congress
must judge; and that determination cannot be interfered with
by the judicial branch of the government, unless the exemption
is of such a character and is so unreasonably large as to au-
thorize the court to say that Congress, under the pretence merely
of legislating for the general good, has put upon a few persons
burdens that, by every principle of justice and under every
sound view of *taxation*, ought to have been placed upon all or
upon the great mass of the people. If the exemption had been
placed at $1,500 or even $2,000, few, I think, would have con-
tended that Congress, in so doing, had exceeded its powers. In
view of the increased cost of living at this day, as compared with
other times, the difference between either of those amounts and
$4,000 is not so great as to justify the courts in striking down
all of the income tax provisions. The basis upon which such
exemptions rest is that the general welfare requires that in tax-
ing incomes, such exemption should be made as will fairly cover
the annual expenses of the average family, and thus prevent

the members of such families becoming a charge upon the public."

Mr. Justice Brown said (Ib. 693):

"Irrespective, however, of the Constitution, a tax which is wanting in uniformity among members of the same class is, or may be, invalid. But this does not deprive the legislature of the power to make exemptions, provided such exemptions rest upon some principle, and are not purely arbitrary, or created solely for the purpose of favoring some person or body of persons. Thus in every civilized country there is an exemption of small incomes, which it would be manifest cruelty to tax, and the power to make such exemptions once granted, the amount is within the discretion of the legislature, and so long as that power is not wantonly abused, the courts are bound to respect it. In this law there is an exemption of $4,000, which indicates a purpose of the part of Congress that the burden of this tax shall fall on the wealthy, or at least upon the well-to-do. If men who have the income or property beyond their pressing needs are not the ones to pay taxes, it is difficult to say who are; in other words, enlightened taxation is imposed upon property and not upon persons. Poll taxes, formerly a considerable source of revenue, are now practically obsolete. The exemption of $4,000 is designed, undoubtedly, to cover the actual living expenses of the large majority of families."

In *Minot v. Winthrop*, 162 Mass. 113, the court held that the legislature acted within its discretion in making exemptions of $10,000 in an inheritance tax law, although the Constitution required the tax to be "reasonable". No doubt an exemption in such a law might be larger than one in an income tax law under such a constitutional provision.

As shown by the above references, the amount of an exemption of this kind is largely within the discretion of the legislature and the court cannot say that it abused its discretion in this instance.

(b) The Act provides in Section 4 that "only one deduction of one thousand dollars shall be made from the aggregate annual income of all members of one family composed of one or both parents and one or more minor children, or husband and wife; that guardians shall be allowed to make a deduction in favor

of each and every ward, except where two or more wards are comprised in one family, in which case the aggregate deduction in their favor shall not exceed one thousand dollars."

It is contended that this provision discriminates between large and small families, between married and unmarried persons especially if the wife as well as the husband is earning an income, and between two or more wards comprised in one family and wards not comprised in one family.

Similar provisions were made in the Federal income tax laws, but though the same arguments were urged against them in the cases above cited, we believe no member of the court alluded to them.    Mr. Assistant Attorney-General Whitney referred to them in his argument as follows :

"Objection is further made that but one exemption is allowed to each family, whether its income belong to one member or is contributed by more than one—that is, when the family consists of husband and wife, or parents and minor children, so that the income is combined by the common law.   This is a corollary to the reasoning upon which the law is based.   Two families of equal size and pecuniary ability may be presumed to suffer to the same extent from taxes upon consumption, whether the income all belongs to one member of the family, or not."

It is impossible to attain absolute equality or uniformity in taxation.   Approximate equality and uniformity is all that is required.   The legislature may classify objects and provide different methods of estimating amounts or values.   So long as it acts in good faith and on general lines and makes distinctions on some reasonable basis, the courts cannot interfere.   The provisions in question seem to be in harmony with the general theory of the Act.   The Act seems to deal with units whether corporate or private.   It treats as a unit all whether few or many, large or small, whose income or incomes on the one hand and expenses on the other hand are combined.   Taxation laws must be practical.   They cannot be utopian.   Perhaps no two persons would agree as to just what a perfect tax law should be. It is easy to raise objections, but the moment an attempt is made to obviate the objections by framing the law differently, new

objections arise. If the thousand-dollar exemption were made to apply to each individual, there would doubtless be much greater inequality in actual results than is the case under the law as it stands, as will appear by a little reflection.

(c) Section 3, which prescribes the method of estimating incomes, provides that they shall include, among other things, "the amount of sales of all movable property, less the amount expended in the purchase or production of the same, and in the case of a person not including any part thereof consumed directly by him or his family."

It is contended that this is a discrimination in favor of farmers or agriculturists against other persons.

The provision is general. It is not confined to any particular class. It is not invalid because it operates differently on different members of the community. As well might it be argued that the carriage tax is invalid because it discriminates in favor of non-carriage owners against carriage owners. The provision in question acts uniformly upon all within its scope. Further, as we remarked above, tax laws must be practical. It would be next to impossible for every one to keep an account and estimate the value of everything he produced and consumed. Accordingly, the law makes sales and expenditures the basis of estimating income in the case of movable property, as it does in the case of real property, when dealing with the property itself as distinguished from the income derived from it.

(d) Section 2, which imposes the tax on corporations, contains a proviso, "that nothing herein contained shall apply to corporations, companies or associations conducted solely for charitable, religious, educational or scientific purposes, including fraternal beneficial societies, nor to insurance companies taxed on a percentage of the premiums under the authority of another Act."

No question seems to be raised as to charitable, religious, educational, scientific or fraternal beneficial societies, corporations or companies, but it is contended that there is no reasonable basis for exempting insurance companies; that, while there

39

might be some basis for this distinction, because an income tax
is laid on insurance companies under another Act, yet that basis
is removed by the fact that that other Act expressly exempts such
companies from other taxes under that Act, thus leading to the
result that insurance companies are taxed only once while other
companies are taxed twice.

It will be noticed that this Act exempts only such
insurance companies as are taxed on a percentage of
the premiums under the other Act, and that under the
other Act only foreign insurance companies are so taxed.
Thus domestic insurance companies (of which there are none)
are taxed under both Acts the same as other companies, and
only foreign insurance companies are taxed one per cent. on
their *gross* premiums while other companies are taxed one per
cent. on their *net* income. It does not appear that foreign com-
panies own any property in these islands. They must be pre-
sumed to own some office furniture used by their agents which
perhaps would not exceed three hundred dollars in value—the
amount of the general exemption in the property tax Act, but
it is doubtful if we can assume that they own more. As the
court said in *Cargill Co. v. Minnesota, supra*: "It is worthy
of observation in this connection that it was neither alleged nor
proved that there were in the State any elevators or warehouses
that were not situated on the right of way of a railroad." The
fact that the distinction is confined to foreign insurance com-
panies would seem to indicate that in the opinion of the legis-
lature there was some ground upon which such companies
should be taxed in a different manner from other companies,
and we can readily assume that it was because such companies
were doing much business and had little or no property here. In
our opinion there was sufficient ground upon which the legisla-
ture could classify in the present case. Similar classifications
have been recognized as proper elsewhere. In *Com. v. Del. Div.
Canal Co., supra*, the court said: "Nor is classification neces-
sarily based upon any essential differences in the nature or, in-
deed, the condition of the various subjects; it may be based as

well upon the want of adaptability to the same methods of taxation, or upon the impracticability of applying to the various subjects the same methods, so as to produce just and reasonably uniform results, or it may be based upon well-grounded considerations of public policy. Hence it is that some classes of corporations are taxed upon net earnings, or income; * * * others upon their gross receipts; insurance companies upon the gross amount of their premiums. * * * Foreign insurance companies have been distinguished from domestic companies, and taxed independently and differently." In *Pacific Express Co. v. Seibert, supra,* the court upheld a discrimination in a tax law based upon the same principle, non-ownership of property to any great extent, saying, among other things:

"The legislation in question cannot be considered as invidiously discriminating against the express companies defined by it and in favor of other companies or persons that may carry express matter on certain other conditions or under different circumstances. There is an essential difference between express companies defined by this act and railroad or steamboat companies or other companies that own their own means of transportation. The vital distinction is this: Railroad companies pay taxes on their road-beds, rolling stock and other tangible property as well as, generally, upon their franchise; and steamboat companies likewise pay a tax upon their tangible property. This tax is not necessarily an *ad valorem* tax at the same rate as is paid on other private property in the State belonging to individuals. Generally, indeed, it is not, but is often determined by other means and at different rates, according to the will of the State legislature. *Kentucky Railroad Tax Cases,* 115 U. S. 321, 337. On the other hand, express companies, such as are defined by this act, have no tangible property, of any consequence, subject to taxation under the general laws. There is, therefore, no way by which they can be taxed at all unless by a tax upon their receipts for business transacted. This distinction clearly places express companies defined by this act in a separate class from companies owning their own means of transportation. They do not do business under the same conditions, or under similar circumstances. In the nature of things, and irrespective of the definite legislation in question, they belong to

different classes. There can be no objection, therefore, to the discrimination made as between express companies defined by this act and other companies or persons incidentally doing a similar business by different means and methods, in the manner in which they are taxed. Their different nature, character and means of doing business justify the discrimination in this respect which the legislature has seen fit to impose. The legislation in question does not discriminate between companies brought within the class defined in the first section; and such companies being so entirely dissimilar, in vital respects, as regards the purposes and policy of taxation, from railroad companies and the like owning a large amount of tangible and other property subject to taxation under other and different laws, and upon other and different principles, we do not see how, under the principles of the many decisions of this court upon the subject, it can be held violative either of the Fourteenth Amendment of the Constitution of the United States, or of the provision in the Constitution of Missouri relative to equality and uniformity of taxation."

Duplicate taxation is not necessarily invalid. In construing a statute there is, no doubt, a presumption against an intention on the part of the legislature to produce such a result, and a tax that is duplicate may be invalid because it operates as an unjust discrimination. Cooley, Taxations, 158 *et seq.* But whether it is duplicate or not is not the test of its validity. Some individuals and corporations generally have to pay taxes that others do not. Some are taxed several times—once under each of several laws, while others are taxed only once under one law. That must necessarily be the case under any scheme that includes different methods of taxation. In the present instance, there is, as we have seen, a reasonable basis for classification. The two classes are taxed, as they properly might be, by different methods. One is taxed one per cent. on property value and two per cent. on net income; the other, one per cent. on gross income. The court cannot say that this produces inequality in results. There would be inequality, perhaps greater inequality, of result if both classes were taxed one per cent. on their property and two per cent. on their net income.

Point (7), invalidity of the Act as a whole because of invalidity of essential parts. As we have not found the Act invalid in essential parts, it follows that it is not invalid as a whole.

If this law is invalid by reason of its classification, it would seem that every tax law on the statute books is also invalid—whether the license Act, the stamp Act or the general property tax Act.

The Act is unquestionably an attempt made in good faith to provide in a just and reasonable way for an increase of revenue greatly needed because of the loss of all customs duties consequent upon the abrogation of Hawaiian customs laws and the extension of the customs laws of the United States to these islands. There is not upon its face any indication of a desire to unjustly discriminate. It is the duty of the court to uphold the acts of the legislative branch of the government unless they are clearly invalid. Whether the method pursued in this instance was the best that could be devised for increasing the revenues of the government, is a question of policy with which the court has nothing to do. It may not be out of place, however, to quote the following from the opinion of Mr. Justice Harlan in the case above cited (158 U. S. 676): "There is nothing in the nature of an income tax *per se* that justifies *judicial* opposition to it upon the ground that it illegally discriminates against the rich or imposes undue burdens upon that class. There is no tax which, in its essence, is more just and equitable than an income tax, if the statute imposing it allows only such exemptions as are demanded by public considerations and are consistent with the recognized principles of the equality of all persons before the law, and, while providing for its collection in ways that do not unnecessarily irritate and annoy the taxpayer, reaches the earnings of the entire property of the country, except governmental property and agencies, and compels those, whether individuals or corporations, who receive such earnings, to contribute therefrom a reasonable amount for the support of the common government of all."

Judgment is ordered for the defendant in each case.

*A. S. Hartwell* and *Smith & Lewis* for the plaintiffs.

*Robertson & Wilder* for the defendants.

### DISSENTING OPINION OF GALBRAITH, J.

These cases are original submissions under the statute.

In the Robertson case the agreed facts are as follows:

First: "That there is a question in difference between the respective parties hereto which might be the subject of a civil action in the Circuit Court of said Territory. That said parties have agreed upon the following Statement of Facts upon which the controversy depends, and without action to present herewith a submission of the same to the Justices of the Supreme Court of the Territory of Hawaii, for their decision, pursuant to Sections 1255-1258, Civil Laws of 1897, and Act 18 of the Session Laws of 1898, of said Territory."

Second: "That the plaintiff is a resident of Honolulu, in the First Taxation Division of the Territory of Hawaii."

Third: "That J. W. Pratt is the duly appointed, qualified and acting Assessor and Collector of Taxes for the First Taxation Division of said Territory of Hawaii, residing in said Honolulu."

Fourth: "That said plantiff has paid or stands ready and willing to pay all taxes levied, assessed or collected upon his property pursuant to Act 51 of the Session Laws of 1896 for the years 1900-1901, which said taxes include taxes assessed upon cash on hand, being income derived by the plaintiff since the first day of July, 1900, and remaining unexpended on the date of assessment under said Act 51."

Fifth: "That on the 23rd day of July, 1901, plaintiff duly made and filed, under protest, with said Assessor, his taxation return pursuant to Section 6 of Act 20 of the Session Laws of 1901 of the Territory of Hawaii, entitled "An Act to Provide a Tax on Incomes.""

Sixth: "That the amount of the total income, gains and profits of said plaintiff for the year ending June 30, 1901, less the deductions made pursuant to the provisions of said Act 20 of the Session Laws of 1901, is the sum of six thousand five hundred and forty-five and sixty-three one-hundredths dollars ($6,545.63). That the amount of the tax on the income, gains

and profits of said plaintiff required to be paid by virtue of said Act 20 is the sum of one hundred and thirty and ninety-one one-hundredths dollars ($130.91), the same being two per cent. of the net income of said plaintiff as provided by said Act."

Seventh: "That thereafter, to wit: on the 9th day of August, 1901, said plaintiff paid the said sum of one hundred and thirty and ninety-one one-hundredths dollars ($130.91), the same being in payment of the tax upon his income, gains and profits, levied and assessed as aforesaid, to said defendant as such Assessor, under protest, and with notice that he intended to bring suit to test the validity of said tax, and said plaintiff thereupon demanded the return to him of said sum of one hundred and thirty and ninety-one one-hundredths dollars ($130.91) so paid as aforesaid, on the ground that said tax is unconstitutional, illegal, invalid and void; and the said Assessor thereupon refused to pay the said sum back to said plaintiff."

Eighth: "Plaintiff claims that said Act 20 of the Session Laws of 1901 of the Territory of Hawaii (entitled 'An Act to Provide a Tax on Incomes,' is unconstitutional, invalid, inoperative and void, upon the ground that the same is inconsistent with and not authorized by the Constitution and laws of the United States and (or) by the Organic Act of the Territory of Hawaii; and that by reason thereof the said tax so assessed, paid and required as aforesaid was illegally assessed and levied and the said sum of one hundred and thirty and ninety-one one-hundredths dollars ($130.91) should be returned to this plaintiff, who herewith submits detailed specifications of the grounds for holding said Act to be unconstitutional, invalid, inoperative and void, said specifications being hereunto annexed and marked Exhibit 'A'."

Ninth: "Defendant claims that said Act 20 of the Session Laws of 1901 of the Territory of Hawaii is constitutional and valid; that said assessment was legally made; that the tax so paid as aforesaid is legally required by said defendant, as such Assessor, and that said payment should stand as made."

The points relied on to establish the unconstitutionality of the Act are as follows:

1. "The provisions allowing only one deduction of one thousand dollars from the aggregate annual income from all members of one family composed of one or both parents and one or more minor children, husband and wife, and in the case of a

guardian of two or more minors in one family, is inconsistent with the 14th or 5th Amendments of the Constitution of the United States."

2.   "The provision exempting incomes under one thousand dollars is inconsistent with the 14th or 5th Amendment of the Constitution of the United States."

3.   "The provision of the Act in so far as resulting in taxation of the salaries of the Chief Justice and Associate Justices of the Supreme Court and Judges of the Circuit Courts of the Territory of Hawaii are inconsistent with Section 21 of the Organic Act and other laws of the United States."

4.   "The provisions of the Act in so far as resulting in the taxation on bonds of the United States Government are inconsistent with the Constitution and laws of the United States."

5.   "The provisions of the Act relative to cases of refusal or neglect to make returns whereby the Assessor may lawfully summon any officer of a corporation or any person having possession of the books of the company to produce the same and to give testimony under oath respecting any income liable to tax and to add two hundred per cent. to the amount of the tax in case of fraudulent returns is inconsistent with the 4th, 5th or 6th Amendments of the Constitution of the United States."

6.   "Said Act arbitrarily, unreasonably and unlawfully exempts persons and property from taxation."

7.   "Said Act is unconstitutional as resulting in duplicate taxation for the reason that the income, gains and profits derived from all real and personal property situate in said Territory is taxed pursuant to Sections 17 and 69 of Act 51 of the Session Laws of 1896, heretofore passed and now standing unrepealed."

8.   "That the whole Act is unconstitutional, invalid, inoperative and void by reason of the invalidity of the many provisions thereof inasmuch as it would result in a subversion of the legislative intent to enforce only the remaining provisions of said Act."

9.   "That said Act is otherwise unconstitutional, null and void."

10.   "That said Income Tax Law is based on no rule of uniformity, nor is it based on a rule of apportionment, such as the Constitution requires of taxes imposed by Congress upon the States of the United States, and is therefore inconsistent with

the Constitution of the United States as well as with the Organic Act giving the Constitution the same force and effect as elsewhere in the United States."

11.   "That said Income Tax Law authorizes taxation which is not uniform and is not proportonate taxation within the Territory of Hawaii, and therefore is inconsistent with the Constitution of the United States."

In the Waimea Sugar Mill Companv the facts are similar to those in the Robertson. case except the allegation that the plaintiff is a corporation and the difference in the amount of the tax paid. The points urged against the validity of the Act are as follows:

1.   "The provisions taxing corporations on total net income without the exemption of the one thousand dollars allowed individuals, is inconsistent with the 14th or 5th Amendments of the Constitution of the United States."

2.   "The provision totally exempting insurance companies taxed on a percentage of the premiums under the authority of another Act is an unwarranted discrimination and inconsistent with the 14th or 5th Amendments of the Constitution of the United States."

3.   "The provision exempting incomes under one thousand dollars is inconsistent with the 14th or 5th Amendments of the Constitution of the United States."

4.   "The provisions of the Act in so far as resulting in taxation of the salaries of the Chief Justice and Associate Justices of the Supreme Court and Judges of the Circuit Courts of the Territory of Hawaii are inconsistent with Section 21 of the Organic Act and other laws of the United States."

5.   "The provisions of the Act in so far as resulting in the taxation on bonds of the United States Government are inconsistent with the Constitution and laws of the United States."

6.   "The provisions of the Act relative to cases of refusal or neglect to make returns whereby the Assessor may lawfully summon any officer of a corporation or any person having possession of the books of the company to produce the same and to give testimony under oath respecting any income liable to tax and to add two hundred per cent. to the amount of the tax in case of fraudulent returns is inconsistent with the 4th, 5th or 6th Amendments of the Constitution of the United States."

7.  "Said Act arbitrarily, unreasonably and unlawfully exempts persons and property from taxation."

8.  "Said Act is unconstitutional as resulting in duplicate taxation for the reason that the income, gains and profits derived from all real and personal property situate in said Territory is taxed pursuant to Sections 17 and 69 of Act 51 of the Session Laws of 1896, heretofore passed and now standing unrepealed."

9.  "That the whole Act is unconstitutional, invalid, inoperative and void by reason of the invalidity of the many provisions thereof, inasmuch as it would result in a subversion of the legislative intent to enforce only the remaining provisions of said Act."

10.  "That said Act is otherwise unconstitutional, null and void."

11.  "That said Income Tax Law is based on no rule of uniformity, nor is it based on a rule of apportionment, such as the Constitution requires of taxes imposed by Congress upon the States of the United States, and is therefore inconsistent with the Constitution of the United States as well as with the Organic Act giving the Constitution the same force and effect *as elsewhere* in the United States."

12.  "That said Income Tax Law authorizes taxation which is not uniform and is not proportionate taxation within the Territory of Hawaii, and therefore is inconsistent with the Constitution of the United States."

I agree with counsel for the defendant that the law in question should be considered in connection with the other tax laws in force in the Territory as constituting a system of laws for raising necessary revenue for governmental purposes.

Act 51, Laws of 1896, continued in force by the Organic Act creating the Territory of Hawaii, provides, *inter alia*, as follows:  Sec. 1.  For the division of the Islands into four taxation districts; Sec. 2. That all property, except growing rice, shall be assessed as of the first day of January of each year; that personal and dog tax shall be assessed as of the same date that growing rice shall be assessed as of May 1st in each year. Secs. 3, 4 and 6 provides respectively for a poll, school and road tax.  Sec. 8.  For a cart and dray tax.  Sec. 9.  For a carriage, wagon, wagonette, horse and omnibus tax.  Sec. 11.  For a dog

tax discriminating against the female dog. This discrimination, however, was removed by Act 21 of the Legislature of 1901 (all dogs in the Territory now being taxed under the rule of "uniformity and equality.") Sec. 14 reads: "Except as herein provided, all real property and all personal property within the Republic shall be subject to an annual tax of one per cent. upon the full cash value of the same." Sec. 15 defines "real property" and Sec. 16 "personal property". Sec. 17. "All real and personal property and the interests of any person in any real or personal property shall be assessed separately as to each item thereof for its full cash value.

"Provided, however, that in all cases where real and personal property, or several classes or kinds or parcels of real estate or personal property respectively, are combined and made the basis of an enterprise for profit, the combined property forming such basis of such enterprise for profit, shall be assessed as a whole on its fair and reasonable aggregate value." The remaining part of the section provides for the method to be pursued in ascertaining the "aggregate value" of such property. Sec. 18 provides for assessing the individual interest of every person in every kind of property and makes every tax due upon property a lien thereon. Sec. 20 reads: "All foreign marine and fire insurance companies carrying on business in the Republic shall pay for and in respect of every one hundred dollars received by such companies or their agents respectively, for gross premiums, during the year preceding the assessment of taxes, the sum of one dollar, and such companies shall not be caused to pay any other taxes or duties under this Act."

Sec. 27 requires the property of corporations and copartnerships to be assessed in the name of the company and relieves the individual member from assessment on his interest or shares in the company. Sec. 28 prescribes method of taxing mortgaged property. Sec. 31 exempts diplomatic agents, clergymen, members of fire department and officers and members of the National Guard. Sec. 33 exempts from all tax government property and certain school, hospital and church property and Sec. 34

provides that the tax of one per cent. shall be collected on property in excess of $300.00. In addition to the above provisions there are certain stamp duties collected and a tax on inheritances.

Act 20, Laws of 1901, reads in part as follows:

"Section 1. From and after the first day of July, A. D. 1901, there shall be levied, assessed, collected and paid annually upon the gains, profits and income, over and above one thousand dollars, derived by every person residing in the Territory of Hawaii from all property owned, and every business, trade, profession, employment or vocation carried on in the Territory, and by every person residing without the Territory from all property owned, and every business, trade, profession, employment or vocation carried on in the Territory, and by every servant, or officer, of the Territory wherever residing, a tax of TWO PER CENT. on the amount so derived during the year preceding.

"Section 2. There shall be levied, assessed, collected and paid annually, except as hereinafter provided, a tax of TWO PER CENT. on the net profit or income above actually operating and business expenses, from all property owned, and every business, trade, employment or vocation carried on in the Territory of Hawaii, of all corporations doing business for profit in the Territory, no matter where created and organized; provided, however, that nothing herein contained shall apply to corporations, companies or associations conducted solely for charitable, religious, educational or scientific purposes, including fraternal beneficiary societies, nor to insurance companies taxed on a percentage of the premiums under the authority of another Act.

"Section 3. In estimating the gains, profits and income of any person or corporation, there shall be included all income derived from interest upon notes, bonds and other securities, except such bonds of the Territory of Hawaii or of municipalities hereafter created by the Territory the principal and interest of which are by the law of their issuance exempt from all taxation; profits realized within the year preceding from sales of real estate, including leaseholds purchased within two years; dividends upon the stock of any corporation; the amount of all premiums on bonds, notes or coupons; the amount of sales of all movable property, less the amount expended in the purchase or production of the same, and in the case of a person not in-

cluding any part thereof consumed directly by him or his family; money and the value of all personal property acquired by gift or inheritance, and all other gains, profits and income derived from any source whatsoever.

"Section 4. The net profits or income of all corporations shall include the amounts paid or payable to, or distributed or distributable among shareholders from any fund or account, or carried to the account of any fund or used for construction, enlargements of plant, or any other expenditure or investment paid from the net annual profits made or acquired by said corporation.

"In computing incomes, the necessary expenses actually incurred in carrying on any business, trade, profession or occupation, or in managing any property, shall be deducted, and also all interest paid by such person or corporation on existing indebtedness. And all government taxes and license fees paid within the year shall be deducted from the gains, profits or income of the person who or the corporation which has actually paid the same, whether such person or corporation be owner, tenant or mortgagor; also all losses actually sustained during the year incurred in trade or arising from losses by fire not covered by insurance, or losses otherwise actually incurred.

"Provided, that no deduction shall be made for any amount paid out for new buildings, permanent improvements or betterments made to increase the value of any property or estate.

"Provided further, that no deduction shall be made for personal or family expenses, the exemption of one thousand dollars mentioned in Section 1 being in lieu of same.

"Provided further, that where allowable herein only one deduction of one thousand dollars shall be made from the aggregate annual income of all the members of one family composed of one or both parents and one or more minor children, or husband and wife; that guardians shall be allowed to make a deduction in favor of each and every ward, except where two or more wards are comprised in one family, in which case the aggregate deduction in their favor shall not exceed one thousand dollars.

"Provided further, that in assessing the income of any person or corporation there shall not be included the amount received from any corporation as dividends upon the stock of such corporation if the tax of two per cent. has been assessed upon its net profits by said corporation as required by this Act, nor any bequest or inheritance otherwise taxed as such.

"Section 8.    When any person or corporation having a tax-
able income refuses or neglects to render any return or list re-
quired by law or decline to take oath or affirmation thereto
the Assessor may make such assessments as he may consider
just and the same shall be binding and conclusive upon all par-
ties and shall not be subject to appeal.    In case of any false or
fraudulent return or valuation by any tax payer the Assessor
shall add 200 per cent. to a just valuation of the income of such
tax payer and the amount of the tax assessed on such increase
shall become part of the tax on the said income."

The tax attempted to be levied and collected under the pro-
visions of Act 20, is a direct tax.    Calling it an income tax
does not change its character.    It is a direct tax upon the real
and personal property above the exemption of $1,000 the same
as the tax of one per cent. provided for under the Laws of 1886.
Chief Justice Fuller speaking for the Supreme Court of the
United States said:    That the tax on income from real estate
"fell within the same class as the source whence the income was
derived, that is, that a tax upon the realty and a tax upon the
receipts therefrom were alike direct."    *Pollock v. Farmers'
Loan & Trust Co.*, 158 U. S. 618.    All of the taxes levied
under the laws of the Territory except the stamp tax and that
on inheritances are direct taxes.

It will be observed that under the Laws of 1886 the legis-
lature made a careful classification of property for taxation
purposes: that no kind of property fell under two classifications:
that care was taken in making the classifications to avoid double
taxation.    That under Act 20 a different classification is at-
tempted to be made of a part of the same property, that is all
real estate and personal property in the Territory, and to tax
the same under a different rule; that in Act 20 the exemption
of persons on account of their calling or occupation is omitted
and a general exemption of all persons whose income is less
than one thousand dollars per annum and that the exemption of
corporations organized for religious, charitable or educational
purposes is maintained and the list is increased by adding to it
insurance companies.

The validity of this Act is attacked on the several grounds hereinbefore set out. Many of these objections run only to specific provisions of the Act and if sustained would not impair the Act as a whole. Two of the objections go to the validity of the law as a whole, that is (1) that the exemptions contained therein render it void, and (2) that the classification results in double taxation and an unequal and unjust distribution of the burdens of taxation.

For the purposes of these submissions it will only be necessary to consider these two objections.

It is claimed on behalf of the defendant that the power of the legislature on the subject of taxation is practically unlimited; that the legislature is given the power to legislate on the subject of taxation and that it is the exclusive judge of the objects of taxation and the method to be pursued in levying and collecting taxes.

Section 55 of the Organic Act provides in part: "That the legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable." It is conceded that taxation is a "rightful subject of legislation."

Is it true that there are no specific limitations in the Organic Act on the exercise of this power? An examination of the further provisions of Section 55 discloses the fact that it contains most of the provisions prohibiting the passing of "local or special laws" by the "legislatures of the Territories of the United States now or hereafter to be organized" found in the Act of Congress of July 30, 1886. (24 Statutes at Large, p. 170.) Is is well understood that this Act of Congress was passed to prevent the Territorial legislatures "playing favorites" in legislation. It is true that the limitation on the taxing power of the legislature in the usual terms found in the Organic Acts for the Territories is absent from the Organic Act of this Territory. I do not think it safe to conclude from this fact that Congress did not intend to place any limitation on the exercise of this power by the legislature of this Territory. There

is in Section 55 of the Organic Act the following provision "but the legislature shall not grant to any corporation, association, or individual any special or exclusive privilege, immunity or franchise without the approval of Congress." This is a very broad restriction, and in my opinion can be violated by the legislature in passing a tax law as well as in granting a charter to a private corporation, and that it is an absolute inhibition against the exemptions contained in Act 20 under consideration. That to exempt a man from taxation because his income is less than one thousand dollars per year or to exempt insurance companies from taxation is to grant to such individuals and to such insurance companies a special privilege or immunity not enjoyed by others of the community. That on account of these exemptions being prohibited by the Organic Act without the consent of Congress the whole law is null and void. This point was not raised in the argument and for that reason a decision based on it cannot be made without re-argument (C. L. Sec. 1171), and re-argument is not practicable at this time.

I do not agree with counsel that the 14th Amendment has any application in this case. It is well settled that this amendment is a restraint on the State Governments only and does not restrict Congress in legislating for the Territories nor the Territories in legislating for themselves. Brannon 14th Amendment, p. 46, and cases cited in note.

If it were admitted that there is no express limitation in the Organic Act on the power of the legislature when passing tax laws it does not follow that there is no restraint on the exercise of this power. The Campbell case was decided by the Supreme Court of the Republic in 1897, declaring the Income Tax law of 1896 to be in violation of that provision in the Constitution "requiring each member of society to contribute his proportion or share to the expense of protection." This or a similar requirement whether found in the Organic Act or a written Constitution we understand to be fundamental and must be observed in all tax legislation.

"It has been forcibly, and very truly said, that an unlimited power in the legislature to make any and everything lawful which it might see fit to call taxation, would, when plainly stated, be an unlimited power to plunder the citizen." Cooley on Taxation, p. 66.

"There is no such thing," said Mr. Justice Field, "in the theory of our national government as unlimited power of taxation in Congress. There are limitations of its powers arising out of the essential nature of all free governments; there are reservations of individual rights, without which society could not exist, and which are respected by every government. The right of taxation is subject to these limitations" (citing *Loan Association v. Topeka,* 20 Wall, 655, and *Parkersburg v. Brown,* 106 U. S. 487). Continuing the Justice said: "The inherent and fundamental nature and character of a tax is that of a contribution to the support of the government, levied upon the principal of equal and uniform apportionment among the persons taxed, and any other exaction does not come within the legal definition of a tax."

"This inherent limitation upon the taxation power forbids the imposition of taxes which are unequal in their operation upon similar kinds of property and necessarily strikes down the gross and arbitrary distinctions in the income law as passed by Congress." *Pollock v. Farmers' Loan & Trust Co.,* 157 U. S. 599, 600.

The Congress of the United States, the creator and absolute monarch of the Territory and its legislature, being thus limited and restricted in enacting tax law, it follows as a matter of course that the legislature of the Territory of Hawaii is limited in like manner even in the absence of any written restrictions.

Was the legislature acting within the limitations of its powers in making the exemptions prescribed in this Act?

Section 1 provides "From and after the first day of July, A. D. 1901, there shall be levied, assessed, collected and paid annually upon the gains, profits and income *over and above one thousand dollars,* derived by every person residing in the Territory of Hawaii from all property owned, and every business, trade, profession, employment or vocation carried on in the Territory, and by every person residing without the Territory

from all property owned, and every business, trade or profession, employment or vocation carried on in the Territory, by every servant, or officer, of the Territory wherever residing, a tax of *two per cent.* on the amount so received during the year preceding."

A proviso in Section 4 reads: "Provided further, that no deduction shall be made for personal or family expenses, the exemption of one thousand dollars mentioned in Section 1 being in lieu thereof."

Section 2 provides for the same rate of tax to be levied and collected on the net income of all private corporations doing business in the Territory except insurance companies, and these are exempted from all taxes under this Act.

"An exemption to be admissible, it would seem, ought to be either made on the basis of contract, in which case the public is supposed to receive a full equivalent therefor, or it ought to be made on some ground of public policy, such as might justify a pension or a donation of the public funds on some general rule of which all who come within it may have the benefit. It is difficult to conceive of an exemption law which selects single individuals or corporations, or single articles of property, and taking them out of a class to which they belong, makes them the subject of capricious legislative favor. Such favoritism could make no pretense to equality, it would lack the semblance of legitimate tax legislation." Cooley on Taxation, 152 and 153.

It is contended by counsel for the defendant that "the exemption of one thousand dollars was provided on the theory that that sum represented the cost of providing the necessaries of life for an average-sized family in this Territory and also because the legislature had found that these persons who would be exempted by this provision were already bearing a larger proportional share of the burdens of taxation than their more wealthy neighbors." The answer to the first part of this argument given by the Supreme Court of the Republic when presented by the same counsel in the Campbell case when urging the validity of the income tax law of 1896 in which the exemption was two thousand dollars, is pertinent. "It is argued," said the Chief Justice, "that the exemption of incomes of two

thousand dollars is reasonable and in furtherance of a public purpose, because the sum of two thousand dollars is the average annual cost of living of a family. This is a mere supposition and is not to be taken as true in our community." *Campbell v. Shaw,* 11 Haw. 121. If the court in 1897 refused to accept as true the supposition that two thousand dollars was the average annual cost of living of a family in this community, it does not seem that this court will now accept as true a supposition that one thousand dollars will cover such expense and that an exemption of one thousand dollars on such a theory is reasonable and fair and is in the furtherance of a public purpose. If this assumption be true, why is the exemption allowed to the single man without a family? Under the law the exemption is allowed to the individual without regard to the fact that there may be one or many dependent upon him for support unless the individual is the member of a family and then "only one deduction of one thousand dollars shall be made from the aggregate annual income of all the members of one family composed of one or both parents and one or more minor children, or husband and wife." This is an unjust and indefensible discrimination against the one man or class of men in all communities who should have the thoughtful care of the legislature, that is, the man of large family, and in favor of the man without family. In reply to the last part of the argument, that is, that the legislature found "that the persons exempted had been bearing more than their proportion of the burden of taxation." We fail to note any such finding by the legislature and if it had made such finding we are not sure that the court would be bound by it. It is clear that this exemption is purely arbitrary and capriciously made. No public purpose is sought to be served by it. Those exempted from taxation are not proper subjects of charity. No good reason appears why persons whose income is less than one thousand dollars per year should be relieved from bearing their just proportion of the burdens of taxation.

The exemption of insurance companies from taxation is less defensible than the class of persons above referred to. Why

insurance companies should be classed with charitable, religious and educational corporations or fraternal societies and exempted from paying taxes under this law does not clearly appear. The law says because they are taxed under another Act. The reference is to Section 20 of the Act of 1896, under which insurance companies are taxed one per cent. on gross premiums received. This section provides that "such companies shall not be caused to pay any other taxes or duties under this Act." This exempts the real and personal property of insurance companies from taxation and now this Act 20 exempts the income from all property owned by insurance companies from taxation. It is claimed that insurance companies have no property in the Territory to be protected by its laws. This is not made the basis of the exemption in the statute. The statute says the exemption is made because they are taxed under another law and when we examine that other law we find that the real and personal property of insurance companies are exempt from taxation. We know as a matter of law that insurance companies can own and hold real and personal property. It does not appear from the submission whether they own much or little in this Territory. But it does appear that whatever property is owned by insurance companies in this Territory is wholly relieved from property or income tax. If the legislature can thus favor insurance companies by classing them as "religious, charitable or educational" corporations there is nothing to prevent it from extending similar favors to other corporations without this classification. In the language of Mr. Justice Field, the "inherent limitation upon the taxing power forbids the imposition of taxes which are unequal in their operation upon similar kinds of property" and to make such unjust discrimination in exemptions is beyond the power of the legislature.

As to the second objection. It is conceded that the legislature has the power to classify the objects of taxation, "but it is equally well settled that selections cannot be made out of a class for taxation and others of the same class be exempted." (*Campbell v. Shaw*, Id. 121.) This power of classification must in the

very nature of the power be limited in other respects. When the legislature has once classified the objects of taxation within its jurisdiction this of necessity exhausts the power. If the same property can be classified twice, there is no limit to the number of classifications that may be made. It cannot after the first classification is complete proceed again to classify a part of the objects of taxation without repealing the first classification, otherwise there could be no equality and just apportionment of the burdens of taxation. This is exactly what the legislature has attempted in this income law. Without disturbing the classification made by the revenue law of 1886, it is sought to re-classify a part of the property classified by the law of 1886 and under which a tax of one per cent. on the "full cash value" is levied and collected as of the first day of January of each year, that is, all real estate and all personal property in the Territory is classified, and where its owner has a net income of more than one thousand dollars per annum, the net income therefrom is taxed at two per cent. The result is that a part of the real and personal property is sought to be taxed twice, while other property of the same kind is to be taxed once.

Double taxation does not of necessity render a tax law void for the reason that double taxation of some character is a necessary incident of many tax laws, but where the manifest object and purpose of a law is to levy a double tax on some property and to arbitrarily exempt other property of the same kind, the law is null and void for the reason that it violates the fundamental principles binding on the legislature in enacting tax laws. "The inherent and fundamental nature of a tax is that of a contribution to the support of the government, levied upon the principle of equal and uniform apportionment among the persons taxed." (157 U. S. 600.)

I feel much hesitation in arriving at the conclusion that an Act of the legislature is void and particularly a law enacted to provide needed revenue for the support of the Territorial Gov-

ernment, but the vices of this Act are of such a nature and their practice, if unchecked, are so far-reaching that I am impelled to such conclusion in regards to the Act under consideration.